# WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

155 Federal Street, Boston, Massachusetts 02110   Tel: (617) 422-5300   Fax: (617) 423-6917

*New York • Los Angeles • San Francisco • Washington, DC • Newark • Philadelphia • Baltimore • Miami • Chicago*
*White Plains, NY • Dallas • Albany, NY • San Diego • Houston • Garden City, NY • Boston • London*
*Affiliate Offices: Paris • Berlin • Cologne • Frankfurt • Munich*

—

**www.wemed.com**

**Carey L. Bertrand**
Writer's Ext.: 5424
BertrandC@wemed.com

October 17, 2005

Clerk of Court
U.S. D.C. Massachusetts
One Courthouse Way
Boston, MA 02110

      Re:    Deborah Lumbard v. The Prudential Insurance Company of America and State
            Street Bank and Trust Company
            C.A. No. 05-CV-11124PBS
            Our File No. 08015.00942

Dear Sir/Madam:

       In connection with the above referenced matter, enclosed please find documents to be included in the Defendant's Proposed Administrative Record which was conventionally filed on or about September 13, 2005. The attached documents, stamped DML 00013-DML 00048 should replace bate stamped documents DML00013-DML00054. After this replacement, DML 00049-DML 00054 will be omitted from the record.

       I have also enclosed a revised index for your files.

       Thank you in advance for your courtesy and cooperation. Please do not hesitate to contact me with questions.

                    Very truly yours,

                    Carey L. Bertrand

Enclosures

cc:   James Finnigan, Esq.

46027.1

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEBORAH M. LUMBARD,
     Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA and STATE
STREET BANK AND TRUST
COMPANY,
     Defendants

C.A. NO. 05-CV-11124PBS

## DEFENDANTS' PROPOSED ADMINISTRATIVE RECORD FOR JUDICIAL REVIEW

Pursuant to the scheduling order in this, the defendants submit this proposed administrative record for judicial review. The defendants The Prudential Insurance Company of America ("Prudential") and State Street Bank and Trust Company, ("State Street") proposes that the enclosed documents are properly part of and are to be included in the administrative record in this long-term disability benefits action governed by the Employee Retirement Income Security Act (ERISA) of 1974, 29 U.S.C. 1001 *et seq*. Those documents are listed as Exhibits 1 through 142 below.

| A | **Contract Documents** |
|---|---|
| EXHIBIT 1 | Agreement between The Prudential Insurance Company of America and State Street Bank and Trust Company for Group Contract Number GW-23403 dated 7/1/93 (DML 00001 – DML 00012) |
| EXHIBIT 2 | State Street Bank and Trust Company Long Term Disability Coverage Booklet (DML 00013 – DML 00048) |
| OMITTED | DML 00049 – DML 00054 |

EXHIBIT 3    Amendment to Group Contact No. GW-23403 (DML 00055 – DML 00056)

**B**    <u>**Claims Correspondence**</u>

EXHIBIT 4    Attending Physician's Statement, dated 3/4/00 (DML 00057 – DML 00059)

EXHBIT 5    Letter from Kimberly Donovan to Deborah Madden re: require further medical documentation, dated 8/16/00 (DML 00060)

EXHIBIT 6    Fax Cover Sheet and Letter from Kimberly Donovan to John Richmond, MD re: detailed medical questions, dated 8/16/00 (DML 00061 – DML 00064)

EXHIBIT 7    Fax Cover Sheet and Description of Job Requirements form, dated 9/15/00 (DML 00065 – DML 00067

EXHIBIT 8    Letter from Christina Young to Deborah Madden re: no longer meet requirements of the Group Policy (STD), dated 9/29/00 (DML 00068 – 00069)

EXHIBIT 9    Letter from Christina Young to State Street Bank & Trust Company re: no longer meet requirements of the Group Policy (STD), dated 9/29/00 (DML 00070 – DML 00071)

EXHIBIT 10    Fax Cover Sheet and Description of Job Requirements re: revised description, dated 10/5/00 (DML 00072 – DML 00074)

EXHIBIT 11    Letter from Ann Harrison Dudley to Jodi Prosperi re: confirm physical inability of Deborah Madden, dated 10/24/00, (DML 00075)

EXHIBIT 12    Fax Cover Sheet, Description of Job Requirement and Job Description, dated 11/10/00 (DML 00076 – DML 00079)

EXHIBIT 13    Letter from J.L. Carty to Jodi Prosperi re: travel/entertainment responsibilities of Business Officer, dated 11/14/00 (DML 00080)

EXHIBIT 14    Letter from John Grady to Jodi Prosperi re:  travel/entertainment responsibilities of Business Officer, dated 11/15/00 (DML 00081)

EXHIBIT 15    Letter from K. Jill Rizzotti to Jodi Prosperi re: response to Prudential's denial of STD with Exhibits, dated 11/27/00 (DML 00082 – DML 00097)

EXHIBIT 16    Letter from K. Jill Rizzotti to Jodi Prosperi re: response to Prudential's denial of STD with Exhibits, dated 11/27/00 (DML 00098 – DML 00114)

EXHIBIT 17    Letter from Jodi Prosperi to Deborah Madden re: upholding decision to terminate disability, dated 12/12/00 (DML 00115 – DML 00117)

EXHIBIT 18    Letter from Jodi Prosperi to State Street Bank & Trust Company re: upholding decision to terminate disability, dated 12/12/00 (DML 00118 – DML 00119)

EXHIBIT 19    Fax Cover Sheet and Restriction and Limitations form from Dolores Mayo to John Richmond, MD, dated 12/20/00 (DML 00120 – DML 00123)

EXHIBIT 20    Fax Cover Sheet and Medical Authorization form from Dolores Mayo to Dr. Sukiennik's office, dated 12/20/00 (DML 00124 – DML 00126)

EXHIBIT 21    Fax Cover Sheet and Medical Authorization form from Dolores Mayo to Steven Harris, South Shore Sports Therapy, dated 12/20/00 (DML 00127 – DML 00128)

EXHIBIT 22    Fax Cover Sheet and from Dolores Mayo to Steven Harris, South Shore Sports Therapy, dated 12/20/00 (DML 00129 – DML 00130)

EXHIBIT 23    Fax Cover Sheet and from Dolores Mayo to Kristi at Dr. Richmond's office, dated 12/26/00 (DML 00131 – DML 00132)

EXHIBIT 24    Letter from Jodi Prosperi to Deborah Madden re: eligible for benefits and reinstated claim, dated 1/23/01 (DML 00133 – DML 00135)

EXHIBIT 25    Invoice from Injury Management Resources, Inc., dated 5/31/01 (DML 00136)

EXHIBIT 26    Initial/Closure Vocational Report from Karla Forgiel, Rehab Counselor, to Bela Dama, OTR, dated 6/3/01 (DML 00137 – DML 00142)

EXHIBIT 27    Fax Cover Sheet and Initial/Closure Vocational Report from Karla Forgiel, Rehab Counselor, to Bela Dama, OTR, dated 6/12/01 (DML 00143 – DML 00148)

EXHIBIT 28    Letter from Dolores Mayo to Deborah Madden re: must apply for Social Security, dated 7/31/01 (DML 00149)

EXHIBIT 29    Letter from Dolores Mayo to Deborah Madden re: LTD Policy, dated 8/7/01 (DML 00150)

EXHIBIT 30    Fax Cover Sheet from Deborah Madden to Dolores Mayo with attached signed Request for Documents or Information form, signed Reimbursement Statement, singed Authorization to Secure Social Security File Information and signed Authorization to Release Information, dated 10/8/01 (DML 00151 – DML 00155)

EXHIBIT 31    Letter from Maria Ness to Deborah Madden re: reimbursement of overpayment, dated 10/16/01 (DML 00156)

EXHIBIT 32    Letter from William Mathews to Christine Latore re: appeal of Prudential's decision, dated 4/3/02 (DML 00157 – DML 00159)

42624.1

EXHIBIT 33    Fax Cover Sheet from Deborah Lumbard to Susan Bishop, attaching Social
Security documents, dated 4/17/02 (DML 00160 – DML 00164)

EXHIBIT 34    Letter from Susan Bishop to Deborah Madden re: review of records for further
coverage, dated 4/22/02 (DML 00165 – DML 00166)

EXHIBIT 35    Initial Vocational Report (written on) from Rosalyn Davidoff to Bela Dama, dated
5/22/02 (DML 00167 – DML 00169)

EXHIBIT 36    Initial Vocational Report from Rosalyn Davidoff to Bela Dama, dated 5/22/02
(DML 00170 – DML 00172)

EXHIBIT 37    Invoice from Injury Management Resources, Inc., dated 5/24/02 (DML 00173 –
DML 074)

EXHIBIT 38    Progress Report (written on) from Rosalyn Davidoff to Bela Dama, dated 6/18/02
(DML 00175 – DML 00177)

EXHIBIT 39    Progress Report from Rosalyn Davidoff to Bela Dama, dated 6/18/02 (DML
00178 – DML 00181)

EXHIBIT 40    Injury Management Resources, Inc., dated 6/20/02 (DML 00182 – DML 00183)

EXHIBIT 41    Letter from Susan Bishop to Deborah Madden re: complete enclosed forms for
review, dated 7/12/02 (DML 00184)

EXHIBIT 42    Progress Report from Rosalyn Davidoff to Bela Dama, dated 7/26/02 (DML
00185 – DML 00188)

EXHIBIT 43    Invoice from Injury Management Resources, Inc., dated 7/30/02 (DML 00189)

EXHBIT 44    Letter from Denise Moppert to Deborah Madden re: not eligible to LTD, dated
8/28/02 (DML 00190 – DML 00191)

EXHIBIT 45    Letter from Denise Moppert to Deborah Madden re: not eligible to LTD, dated
8/28/02 (DML 00192 – DML 00194)

EXHIBIT 46    Letter from Denise Moppert to State Street Bank and Trust Company re:
terminated claim effective 10/3/02, dated 8/28/02 (DML 00195)

EXHIBIT 47    Progress Report from Rosalyn Davidoff to Bela Dama, dated 8/30/02 (DML
00196 – DML 00199)

EXHIBIT 48    Invoice from Injury Management Resources, Inc., dated 8/31/02 (DML 00200)

42624.1

EXHIBIT 49   Letter from William Mathews to Appeals Review Unit re: appeal of decision, dated 9/10/02 (DML 00201 – DML 00205)

EXHIBIT 50   Letter from Denis Moppert to Deborah Madden re: put in writing why appealing, dated 9/10/02 (DML 00206)

EXHIBIT 51   Letter from Denise Moppert to William Mathews re: authorization to release records form, dated 9/12/02 (DML 00207)

EXHIBIT 52   Closure letter from Rosalyn Davidoff to Bela Dama, dated 9/18/02 (DML 00208)

EXHIBIT 53   Signed Authorization to Release Records, dated 9/19/02 (DML 00209)

EXHIBIT 54   Letter from William Mathews to Denise Moppert re: authorizing release of records, dated 9/23/02 (DML 00210)

EXHIBIT 55   Letter from Denise Moppert from William Mathews re: appeals procedure, dated 10/2/02 (DML 00211 – DML 00212)

EXHIBIT 56   Letter from Denise Moppert to William Mathews re: Vocational Report, dated 10/29/02 (DML 00213)

EXHIBIT 57   Letter from Sharon Skeete to Deborah Lumbard re: no job openings at JP Morgan, dated 11/13/02 (DML 00214)

EXHIBIT 58   Letter from Richard Casella re: lacks experience in trading to be securities trader, dated 12/10/02 (DML 00215)

EXHIBIT 59   Letter from William Mathews to Appeals Review Unit re: appeal of decision, dated 1/10/03 (DML 00216 – DML 00227)

EXHIBIT 60   Letter from Appeals Review Unit to William Mathews re: evaluating information, dated 1/30/03 (DML 00228)

EXHIBIT 61   Letter from Christine Latore to State Street Bank and Trust Company re: decision to terminate was appropriate, dated 2/13/03 (DML 00229)

EXHIBIT 62   Letter from Christine Latore to Rich May re: decision to terminate benefits was appropriate, dated 2/14/03 (DML 00230 – DML 00234)

EXHIBIT 63   Fax Cover Sheet from Rachel Evans-Sweeney to Bill Mathews, attaching blank authorizations forms, dated 4/22/03 (DML 00235 – DML 00241)

EXHIBIT 64   Vocational Analysis from Robert Violetta to William Matthews, dated 7/9/03 (DML 00242 – DML 00252)

42624.1

EXHIBIT 65    Letter from William Matthews to Christine Pepe re: second appeal of decision, dated 7/31/03 (DML 00253 – DML 00263)

EXHIBIT 66    Letter from William Matthews to Christine Pepe re: exhibits to Vocational Analysis, dated 8/4/03 (DML 00264 – DML 00270)

EXHIBIT 67    Fax Cover Sheet and letter from William Matthews to Christine Pepe re: exhibits to Vocational Analysis, dated 8/4/03 (DML 00271 – DML 00277)

EXHIBIT 68    Letter from Christopher Cawley to William Matthews re: performing evaluation of appeal, dated 9/10/03 (DML 00278)

EXHIBIT 69    Transferable Skills Analysis/Labor Market Survey from Amy Vercillo to Bela Dama, dated 9/15/03 (DML 00279 – DML 00285)

EXHIBIT 70    Letter from John Barilla to Edward Madden re: evaluation of benefits, dated 9/16/03 (DML 00286)

EXHIBIT 71    Letter from Michelle Pence to William Matthews re: uphold termination of benefits, dated 9/22/03 (DML 00287 – DML 00289)

EXHIBIT 72    Letter from Dan Dougherty to State Street Bank and Trust Company re: uphold termination of benefits, dated 9/29/03 (DML 00290)

EXHIBIT 73    Invoice from Rehabilitation and Re-Employment, Inc., dated 9/30/03 (DML 00291)

EXHIBIT 74    Letter from Daniel Dougherty to William Matthews re: uphold termination of benefits, dated 10/2/03 (DML 00292 – DML 00294)

EXHIBIT 75    Letter from John Barilla to Edward Madden re: upholding decision based on vocational assessment, dated 10/3/03 (DML 00295)

EXHIBIT 76    Letter from William Matthews to Daniel Dougherty re: request for documents used in making decision, dated 11/14/03 (DML 00296 – DML 00298)

EXHIBIT 77    Letter from James Finnigan to Christine Pepe re: third and final appeal and exhibits, dated 12/23/04 (DML 00299 – DML 00508)

EXHIBIT 78    Letter from Renita Powell to James Finnigan re: evaluate information for third appeal, dated 1/6/05 (DML 00509)

EXHIBIT 79    Letter from Renita Powell to James Finnigan re: closing claim until receive medical documentation of treatment, dated 1/26/05 (DML 00510)

EXHIBIT 80   Letter from James Finnigan to Renita Powell re: enclosing medical records, dated 2/17/05 (DML 00511 – DML 00512)

EXHIBIT 81   Letter to James Finnigan to Renita Powell re: enclosing medical records, dated 2/17/05 (DML 00513 – DML 00514)

EXHIBIT 82   Fax Cover Sheet and Letter to James Finnigan to Renita Powell re: enclosing medical records, dated 2/17/05 (DML 00515 – DML 00516)

EXHIBIT 83   Letter from Renita Powell to James Finnigan re: extension to review claim, dated 3/24/05 (DML 00517)

EXHIBIT 84   Fax Cover Sheet from Renita Powell to Reed Review Services, dated 5/18/05 (DML 00518)

EXHIBIT 85   Letter from Renita Powell to James Finnigan re: require extension to make decision, dated 5/18/05 (DML 00519 – DML 00520)

EXHIBIT 86   Fax Cover Sheet and Survey from Renita Powell to Deborah Madden, dated 5/18/05 (DML 00521 – DML 00527)

EXHIBIT 87   Fax Cover Sheet and Letter from James Finnigan to Renita Powell re: file legal action/ denial of extension, dated 5/25/05 (DML 00528 – DML 00529)

EXHIBIT 88   Letter from James Finnigan to Renita Powell re: file legal action/ denial of extension, dated 5/31/05 (DML 00530 – DML 00531)

EXHIBIT 89   Fax Cover Sheet from Susan Britt to Melissa Poortere, attaching Summons and Complaint, dated 6/7/05 (DML 00532 – DML 00538)

EXHIBIT 90   Letter from Marlaina Murray-Hough to State Street Bank & Trust Company re: upheld decision to terminate, dated 6/8/05 (DML 00539)

EXHIBIT 91   Letter from Marlaina Murray-Hough to James Finnigan re: upheld decision to terminate, dated 6/8/05 (DML 00540 – DML 00542)

## C.   **Medical Records**

EXHIBIT 92   South Shore Therapy – Lower Extremity Program Progress Chart, dated 4/21 (DML 00543)

EXHIBIT 93   John Richmond prescription, dated 4/5/00 (DML 00544)

EXHIBIT 94   Physical Therapy Assessment/Care Plan – Lower Extremity form, dated 4/13/00 (DML 00545)

EXHIBIT 95    Fax Cover Sheet from John Richmond, MD to Christina Young attaching medical records, dated 9/13/00) (DML 00546 – DML 00561)

EXHIBIT 96    Fax Cover Sheet from John Richmond, MD to Prudential attaching Office Notes, dated 12/26/00 (DML 00562 – DML 00563)

EXHIBIT 97    South Shore Sports Therapy, Patient Procedure History, dated 4/13/00 – 5/23/00 (DML 00564)

EXHIBIT 98    South Shore Sports Therapy, Patient Evaluation Form, dated 4/13/00 (DML 00565 – DML 00566)

EXHIBIT 99    South Shore Sports Therapy, Attending Physician's Statement, dated 4/13/00 (DML 00567)

EXHIBIT 100    South Shore Sports Therapy, Attending Physician's Statement, dated 4/21/00 (DML 00568)

EXHIBIT 101    South Shore Sports Therapy, Attending Physician's Statement, dated 4/25/00 (DML 00569)

EXHIBIT 102    South Shore Sports Therapy, Attending Physician's Statement, dated 4/27/00 (DML 00570)

EXHIBIT 103    South Shore Sports Therapy, Attending Physician's Statement, dated 5/02/00 (DML 00571)

EXHIBIT 104    South Shore Sports Therapy, Attending Physician's Statement, dated 5/04/00 (DML 00572)

EXHIBIT 105    South Shore Sports Therapy, Attending Physician's Statement, dated 5/10/00 (DML 00573)

EXHIBIT 106    South Shore Sports Therapy, Attending Physician's Statement, dated 5/16/00 (DML 00574)

EXHIBIT 107    South Shore Sports Therapy, Attending Physician's Statement, dated 5/18/00 (DML 00575)

EXHIBIT 108    Letter from Steven Harris to John Richmond, MD re: progress report, dated 5/18/00 (DML 00567)

EXHIBIT 109    John Richmond, MD, prescriptions, dated 5/19/00 (DML 00577)

EXHIBIT 110    South Shore Sports Therapy, Attending Physician's Statement, dated 5/23/00 (DML 00578)

EXHIBIT 111 Physician Evaluation of Patient Physical Abilities, signed by John Richmond, date 1/10/01 (DML 00579 – DML 00580)

EXHIBIT 112 Fax Cover Sheet from John Richmond to Susan Bishop attaching Office Notes, dated 7/23/02 (DML 00581 – DML 00583)

EXHIBIT 113 Fax Cover Sheet from John Richmond to Susan Bishop attaching Office Notes, dated 7/24/02 (DML 00584 – DML 00585)

EXHIBIT 114 Activities of Daily Living Questionnaire, dated 11/23/01 (DML 00586 – DML 00595)

EXHIBIT 115 John Richmond, MD, Notes, dated 6/29/04 (DML 00596)

EXHIBIT 116 New England Medical Center, Office Notes, dated 11/24/03 (DML 00597)

EXHIBIT 117 New England Medical Center, Office Notes, dated 12/4/03 (DML 00598)

EXHIBIT 118 New England Baptist Hospital, Interdisciplinary Patient Assessment, dated 6/29/04 (DML 00599 – DML 00602)

EXHIBIT 119 Questionnaire, dated 6/29/04 (DML 00603)

EXHIBIT 120 New England Baptist Hospital, Medical/Surgical Treatment Consent, dated 6/29/04 (DML 00604 – DML 00605)

EXHIBIT 121 New England Baptist Hospital, OR Preoperative Nurses Record, dated 6/29/04 (DML 00606)

EXHIBIT 122 New England Baptist Hospital, Pre-Operative Assessment, dated 6/29/04 (DML 00607)

EXHIBIT 123 New England Baptist Hospital, Preoperative Checklist, dated 6/29/04 (DML 00608)

EXHIBIT 124 New England Baptist Hospital, Consent for Anesthesia, dated 6/29/04 (DML 00609)

EXHIBIT 125 New England Baptist Hospital, Pre-Anesthesia Record, dated 6/29/04 (DML 00610)

EXHIBIT 126 New England Baptist Hospital, Post Anesthesia Care Unit Record Phase I, dated 6/29/04 (DML 00611 – DML 00612)

EXHIBIT 127 New England Baptist Hospital, Anesthesia Record, dated 6/29/04 (DML 00613)

42624.1

EXHIBIT 128 New England Baptist Hospital, Progress Notes, dated 6/29/04 (DML 00614)

EXHIBIT 129 New England Baptist Hospital, Operative Report, dated 6/29/04 (DML 00615 – DML 00616)

EXHIBIT 130 New England Baptist Hospital, Physician's Orders, dated 6/29/04 (DML 00617 – DML 00619)

EXHIBIT 131 New England Baptist Hospital, General Surgical Outpatient Surgery Discharge Instructions, dated 6/29/04 (DML 00620)

EXHIBIT 132 New England Baptist Hospital, Notice of Privacy Practices Acknowledgement Form, dated 6/29/04 (DML 00621)

### D.    **Miscellaneous**

EXHIBIT 133 SOAP Notes, dated 5/25/00 – 6/7/05 (DML 00622 – DML 00664)

EXHIBIT 134 Telephone Call Log, dated 5/25/00 – 6/8/05 (DML 00665 – DML 00711)

EXHIBIT 135 Internal Employability Review (DML 00712 – DML 00713)

EXHIBIT 136 Vice President, Financial Institutions Job Description (DML 00714 – DML 00715)

EXHBIT 137  Sales-Service Promoter, Physical Requirements (DML 00716 – DML 00717)

EXHIBIT 138 Sales Representative, Job Description (DML 00718 – DML 00722)

EXHIBIT 139 Securities Trader, Occupational Requirements (DML 00723 – DML 00724)

EXHIBIT 140 Registered Representatives, Job Description (DML 00725 – DML 00729)

EXHIBIT 141 Registered Representative, Occupational Requirements (DML 00730 – DML 00731)

EXHIBIT 142 CMS List (DML 00732 – DML 00733)

THE PRUDENTIAL INSURANCE COMPANY
OF AMERICA and STATE STREET BANK AND
TRUST COMPANY,

By Their Attorneys,

William T. Bogaert, BBO # 546321
Carey L. Bertrand, BBO# 650496
WILSON, ELSER, MOSKOWITZ, EDELMAN &
DICKER LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

CERTIFICATE OF SERVICE

I hereby certify that I served a copy of the foregoing
pleading on all parties by mailing same, postage
prepaid, to all counsel of record.
Signed under the pains and penalties of perjury

DATED: 10/17/05

42624.1



Long Term Disability Coverage

State Street Bank &
Trust Company

DML 00013

# Benefit Highlights

## LONG TERM DISABILITY PLAN

This long term disability plan provides financial protection for you by paying a portion of your income while you have a long period of disability.  The amount you receive is based on the amount you earned before your disability began.  In some cases, you can receive disability payments even if you work while you are disabled.  Benefits start after the elimination period.

| | |
|---|---|
| **Program Date:** | January 1, 2000 |
| **Contract Holder:** | STATE STREET BANK AND TRUST COMPANY |
| **Group Contract Number:** | GW-23403 |
| **Covered Classes:** | All eligible full-time Employees working a minimum of 36 ¼ hours per week and all part-time Officers who are scheduled to work at least 20 hours per week. |
| **Minimum Hours Requirement:** | Full-time Employees must be working at least 36 ¼ hours per week. Part-time Employees must be working at least 20 hours per week. |
| **Employment Waiting Period:** | You may need to work for your Employer for a continuous period before you become eligible for the plan.  The period must be agreed upon by your Employer and Prudential. |
| | Your Employer will let you know about this waiting period. |
| **Elimination Period:** | The shorter of 26 weeks and the length of time for which you receive loss of time benefits, salary continuation or accumulated sick leave. |
| | **Benefits begin the day after the Elimination Period is completed.** |
| **Monthly Benefit:** | Option I:  50% of your monthly earnings, but not more than $10,000. |
| | Option II:  70% of your monthly earnings, but not more than $15,000. |
| | Your benefit may be reduced by deductible sources of income and disability earnings.  Some disabilities may not be covered or may be limited  under this coverage. |

**Maximum Period of Benefits:**

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 60 | To your normal retirement age*, but not less than 60 months |
| Age 60 but under age 65 | 54 months |
| Age 65 but under age 70 | 30 months |
| Age 70 but under age 75 | 18 months |
| Age 75 or older | 12 months |

83500
CBH-LTD-1001

DML 00014

(S-1)(23403-LTD)

\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.

No contributions are required for your coverage while you are receiving payments under this plan.

**Cost of Coverage:**   The long term disability plan is provided to you on a contributory basis. You will be informed of the amount of your contribution when you enroll.

**The above items are only highlights of your coverage. For a full description please read this entire Group Insurance Certificate.**

83500
CBH-LTD-1001

**DML 00015**

(S-1)(23403-LTD)

# Table of Contents

Benefit Highlights-Long Term Disability Plan ..................................................................................1

Certificate of Coverage ..........................................................................................................4

General Provisions   .............................................................................................................5

Long Term Disability Coverage-General Information .........................................................................9

Long Term Disability Coverage-Benefit Information .........................................................................10

Long Term Disability-Other Benefits .........................................................................................21

Long Term Disability-Claim Information ......................................................................................22

Long Term Disability-Other Services .........................................................................................25

Glossary ...........................................................................................................................27

Summary  Plan Description ....................................................................................................31

83500
CTC-1001

DML 00016

(S-1)(23403-LTD)

## The Prudential Insurance Company of America

# Certificate of Coverage

The Prudential Insurance Company of America (referred to as Prudential) welcomes you to the plan.

This is your Certificate of Coverage as long as you are eligible for coverage and you meet the requirements for becoming insured. You will want to read this certificate and keep it in a safe place.

Prudential has written this certificate in booklet format to be understandable to you. If you should have any questions about the content or provisions, please consult Prudential's claims paying office. Prudential will assist you in any way to help you understand your benefits.

The benefits described in this Certificate of Coverage are subject in every way to the entire Group Contract which includes this Group Insurance Certificate.

**THIS CERTIFICATE IS NOT A MEDICARE SUPPLEMENT CERTIFICATE. If you are eligible for Medicare, review the Guide to Health Insurance for People with Medicare available from the company.**

### Prudential's Address

The Prudential Insurance Company of America
290 West Mount Pleasant Avenue
Livingston, New Jersey 07039

83500
CERT-1010

4

DML 00017

(S-1

# General Provisions

## What Is the Certificate?

This certificate is a written document prepared by Prudential which tells you:

- the coverage to which you may be entitled;
- to whom Prudential will make a payment; and
- the limitations, exclusions and requirements that apply within a plan.

## General Definitions used throughout this certificate include:

**You** means a person who is eligible for Prudential coverage.

**We, us, and our** means The Prudential Insurance Company of America.

**Employee** means a person who is in active employment with the Employer for the minimum hours requirement.

**Insured** means any person covered under a coverage.

**Plan** means a line of coverage under the Group Contract.

## When Are You Eligible for Coverage?

If you are working for your Employer in a covered class, the date you are eligible for coverage is the later of:

- the plan's program date; and
- the day after you complete your **employment waiting period**.

**Employment waiting period** means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

## When Does Your Coverage Begin?

When your Employer pays the entire cost of your coverage under a plan, you will be covered at 12:01 a.m. on the date you are eligible for coverage, provided you are in **active employment** on that date.

When you and your Employer share the cost of your coverage under a plan, you will be covered at 12:01 a.m. on the latest of:

- the date you are eligible for coverage, if you apply for insurance on or before that date;

- the date you apply for insurance, if you apply within 31 days after your eligibility date; or

- the date Prudential approves your application, if *evidence of insurability* is required.

Evidence of insurability is required if you:

- are a late applicant, which means you apply for coverage more than 31 days after the date you are eligible for coverage; or

- voluntarily canceled your coverage and are reapplying; or

- apply after any of your coverage ended because you did not pay a required contribution; or

- have not met a previous evidence requirement to become insured under any plan the Employer has with Prudential.

An evidence of insurability form can be obtained from your Employer.

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. Full-time Employees must be working at least 36 ¼ hours per week. Part-time Employees must be working at least 20 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Evidence of insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage. Evidence of insurability will be provided at your own expense.

## What If You Are Absent from Work on the Date Your Coverage Would Normally Begin?

If you are absent from work due to injury, sickness, temporary layoff or leave of absence your coverage will begin on the date you return to active employment.

## Once Your Coverage Begins, What Happens If You Are Temporarily Not Working?

If you are on a temporary layoff, and if premium is paid, you will be covered to the end of the month following the month in which your temporary layoff begins.

If you are on a *leave of absence*, and if premium is paid, you will be covered to the end of the month following the month in which your leave of absence begins.

With respect to leave under the federal Family and Medical Leave Act of 1993 (FMLA) or similar state law, continuation of coverage under the plan during such leave will be governed by your Employer's policies regarding continuation of such coverage for non-FMLA leave purposes and any applicable law. Continuation of such coverage pursuant to this provision is contingent upon Prudential's timely receipt of premium payments and written confirmation of your FMLA leave by your Employer.

For full-time Employees, if you are working less than 36 ¼ hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

For part-time Employees, if you are working less than 20 hours per week, for reasons other than disability, and if premium is paid, you will be covered to the end of the month following the month in which your reduced hours begin.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement. Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

## When Will Changes to Your Coverage Take Effect?

Once your coverage begins, any increased or additional coverage will take effect immediately upon the effective date of the change, if you are in active employment or if you are on a covered layoff or leave of absence. If you are not in active employment due to injury or sickness, any increased or additional coverage will begin on the date you return to active employment. An increase in your long term disability coverage may be subject to a pre-existing condition limitation as described in the plan. Any decrease in coverage will take effect immediately upon the effective date of the change. Neither an increase nor a decrease in coverage will affect a *payable claim* that occurs prior to the increase or decrease.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

## When Does Your Coverage End?

Your coverage under the Group Contract or a plan ends on the earliest of:

- the date the Group Contract or a plan is canceled;

- the date you are no longer a member of the covered classes;

- the date your covered class is no longer covered;

83500
CGP-1001

7

DML 00020

(S-1)(23403-LTD)

- the last day of the period for which you made any required contributions;

- the last day you are in active employment except as provided under the temporary absence from work provisions; or

- the date you are no longer in active employment due to a disability that is not covered under the plan.

## Does the Coverage under a Plan Replace or Affect any Workers' Compensation or State Disability Insurance?

The coverage under a plan does not replace or affect the requirements for coverage by workers' compensation or state disability insurance.

## Does Your Employer Act as Prudential's Agent?

For purposes of the Group Contract, your Employer acts on its own behalf. Under no circumstances will your Employer be deemed the agent of Prudential.

## Does This Certificate Address Any Rights to Other Benefits or Affect Your Employment with Your Employer?

This certificate sets forth only the terms and conditions for coverage and receipt of benefits for Long Term Disability. It does not address and does not confer any rights, or take away any rights, if any, to other benefits or employment with your Employer. Your rights, if any, to other benefits or employment are solely determined by your Employer. Prudential plays no role in determining, interpreting, or applying any such rights that may or may not exist.

## How Can Statements Made in Your Application for this Coverage be Used?

Prudential considers any statements you or your Employer make in a signed application for coverage a representation and not a warranty. If any of the statements you or your Employer make are not complete and/or not true at the time they are made, we can:

- reduce or deny any claim; or

- cancel your coverage from the original effective date.

If a statement is used in a contest, a copy of that statement will be furnished to you or, in the event of your death or incapacity, to your eligible survivor or personal representative.

A statement will not be contested after the amount of insurance has been in force, before the contest, for at least two years during your lifetime.

We will use only statements made in a signed application as a basis for doing this.

If the Employer gives us information about you that is incorrect, we will:

- use the facts to decide whether you have coverage under the plan and in what amounts; and

- make a fair adjustment of the premium.

# Long Term Disability Coverage

## GENERAL INFORMATION

### Who Is in the Covered Class(es) for the Insurance?

The Covered Classes are:

All eligible full-time Employees working a minimum of 36 ¼ hours per week and all part-time Officers who are scheduled to work at least 20 hours per week.

### How Many Hours Must You Work to be Eligible for Coverage?

Full-time Employees must be working at least 36 ¼ hours per week.
Part-time Employees must be working at least 20 hours per week.

### What Is Your Employment Waiting Period?

You may need to work for your Employer for a continuous period before you become eligible for the coverage. The period must be agreed upon by your Employer and Prudential.

Your Employer will let you know about this waiting period.

### Who Pays for Your Coverage?

Your coverage is paid for by you and your Employer. Your Employer will inform you of the amount of your contribution when you enroll.

83500
CGI-LTD-1001

DML 00022

(S-1)(23403-LTD)

# Long Term Disability Coverage

## BENEFIT INFORMATION

### How Does Prudential Define Disability?

You are disabled when Prudential determines that:

- you are unable to perform the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*; and

- you have a 20% or more loss in your *indexed monthly earnings* due to that *sickness* or *injury*.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any *gainful occupation* for which you are reasonably fitted by education, training or experience.

The loss of a professional or occupational license or certification does not, in itself, constitute disability.

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative. Refusal to be examined or interviewed may result in denial or termination of your claim.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Regular occupation* means the occupation you are routinely performing when your disability begins. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 50% for Option I or 70% for Option II, of your indexed monthly earnings within 12 months of your return to work.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness. Disability must begin while you are covered under the plan.

*Indexed monthly earnings* means your monthly earnings as adjusted on each July 1 provided you were disabled for all of the 12 months before that date. Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index. Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor. Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

## How Long Must You Be Disabled Before Your Benefits Begin?

You must be continuously disabled through your *elimination period*. Prudential will treat your disability as continuous if your disability stops for 30 days or less during the elimination period. The days that you are not disabled will not count toward your elimination period.

Your elimination period is the shorter of 26 weeks and the length of time for which you receive loss of time benefits, salary continuation or accumulated sick leave.

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

## Can You Satisfy Your Elimination Period If You Are Working?

Yes, provided you meet the definition of disability.

## When Will You Begin to Receive Disability Payments?

You will begin to receive payments when we approve your claim, providing the elimination period has been met. We will send you a payment each month for any period for which Prudential is liable.

## How Much Will Prudential Pay If You Are Disabled and Not Working?

We will follow this process to figure out your *monthly payment*:

1. Multiply your monthly earnings by:  Option I - 50%
                                        Option II - 70%

2. The maximum *monthly benefit* is: Option I - $10,000
                                      Option II - $15,000

3. Compare the answer in item 1 with the maximum monthly benefit. The lesser of these two amounts is your *gross disability payment*.

4. Subtract from your gross disability payment any *deductible sources of income*.

That amount figured in item 4 is your monthly payment.

After the elimination period, if you are disabled for less than 1 month, we will send you 1/30th of your payment for each day of disability.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Monthly benefit* means the total benefit amount for which you are insured under this plan subject to the maximum benefit.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Deductible sources of income* means income from deductible sources listed in the plan that you receive or are entitled to receive while you are disabled.  This income will be subtracted from your gross disability payment.

## What Are Your Monthly Earnings?

Monthly earnings is based on your salary in force as of October 1 of the previous contract year excluding commissions, bonuses and overtime.

## What Will We Use to Determine Monthly Earnings If You Become Disabled During a Covered Layoff or Leave of Absence?

If you become disabled while you are on a covered layoff or leave of absence, we will use your monthly earnings from your Employer in effect just prior to the date your absence begins.

## How Much Will Prudential Pay If You Work While You Are Disabled?

We will send you the monthly payment if you are disabled and your monthly *disability earnings*, if any, are less than 20% of your indexed monthly earnings due to the same sickness or injury.

If you are disabled and your monthly disability earnings are 20% or more of your indexed monthly earnings, due to the same sickness or injury, Prudential will figure your payment as follows:

During the first 12 months of payments, while working, your monthly payment will not be reduced as long as disability earnings plus the gross disability payment does not exceed 100% of indexed monthly earnings.

1. Add your monthly disability earnings to your gross disability payment.

2. Compare the answer in item 1 to your indexed monthly earnings.

If the answer from item 1 is less than or equal to 100% of your indexed monthly earnings, Prudential will not further reduce your monthly payment.

If the answer from item 1 is more than 100% of your indexed monthly earnings, Prudential will subtract the amount over 100% from your monthly payment.

After 12 months of payments, while working, you will receive payments based on the percentage of income you are losing due to your disability.

1. Subtract your disability earnings from your indexed monthly earnings.

2. Divide the answer in item 1 by your indexed monthly earnings. This is your percentage of lost earnings.

3. Multiply your monthly payment by the answer in item 2.

This is the amount Prudential will pay you each month.

If your monthly disability earnings exceed 80% of your indexed monthly earnings, Prudential will stop sending you payments and your claim will end.

Prudential may require you to send proof of your monthly disability earnings on a monthly basis. We will adjust your payment based on your monthly disability earnings.

As part of your proof of disability earnings, we can require that you send us appropriate financial records, including copies of your IRS federal income tax return, W-2's and 1099's, which we believe are necessary to substantiate your income.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible. This would be, based on your restrictions and limitations.

- During the first 24 months of disability payments, the greatest extent of work you are able to do in your regular occupation, that is reasonably available.

- Beyond 24 months of disability payments, the greatest extent of work you are able to do in any occupation, that is reasonably available, for which you are reasonably fitted by education, training or experience.

Salary continuance paid to supplement your disability earnings will not be considered payment for work performed.

## What Happens If Your Disability Earnings Fluctuate?

If your disability earnings are expected to fluctuate widely from month to month, Prudential may average your disability earnings over the most recent 3 months to determine if your claim should continue subject to all other terms and conditions in the plan.

If Prudential averages your disability earnings, we will terminate your claim if the average of your disability earnings from the last 3 months exceeds 80% of indexed monthly earnings.

## What Are Deductible Sources of Income?

Prudential will deduct from your gross disability payment the following deductible sources of income:

1. The amount that you receive or are entitled to receive as loss of time benefits under:

    (a) a workers' compensation law;

    (b) an occupational disease law; or

    (c) any other *act* or *law* with similar intent.

2. The amount that you receive or are entitled to receive as loss of time disability income payments under any:

   (a) state compulsory benefit act or law;

   (b) automobile liability insurance policy;

   (c) other group insurance plan; or

   (d) governmental retirement system as the result of your job with your Employer.

3. The amount that you, your spouse and children receive or are entitled to receive as loss of time disability payments because of your disability under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar *plan* or *act*.

   Amounts paid to your former spouse or to your children living with such spouse will not be included.

4. The amount that you receive as retirement payments or the amount your spouse and children receive as retirement payments because you are receiving payments under:

   (a) the United States Social Security Act;

   (b) the Railroad Retirement Act;

   (c) the Canada Pension Plan;

   (d) the Quebec Pension Plan; or

   (e) any similar plan or act.

   Benefits paid to your former spouse or to your children living with such spouse will not be included.

5. The amount that you:

   (a) receive as disability payments under your Employer's *retirement plan*;

   (b) voluntarily elect to receive as retirement or early retirement payments under your Employer's retirement plan; or

   (c) receive as retirement payments when you reach normal retirement age, as defined in your Employer's retirement plan.

   Disability payments under a retirement plan will be those benefits which are paid due to disability and do not reduce the retirement benefits which would have been paid if the disability had not occurred.

Retirement payments will be those benefits which are paid based on your Employer's contribution to the retirement plan. Disability benefits which reduce the retirement benefits under the plan will also be considered as a retirement benefit.

Amounts received do not include amounts rolled over or transferred to any eligible retirement plan. Prudential will use the definition of eligible retirement plan as defined in Section 402 of the Internal Revenue Code including any future amendments which affect the definition.

6.  The amount you receive under the maritime doctrine of maintenance, wages and cure. This includes only the "wages" part of such benefits.

7.  The amount that you receive, due to your disability, from a third party (after subtracting attorney's fees) by judgment, settlement or otherwise.

8.  The amount that you receive from a partnership, proprietorship or any similar draws.

With the exception of retirement payments, or amounts that you receive from a partnership, proprietorship or any similar draws, Prudential will only subtract deductible sources of income which are payable as a result of the same disability.

We will not reduce your payment by your Social Security income if your disability begins after age 65 and you were already receiving Social Security retirement payments.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

## What Are Not Deductible Sources of Income?

Prudential will not deduct from your gross disability payment income you receive from, but not limited to, the following sources:

*   401(k) plans;

*   profit sharing plans;

*   thrift plans;

*   tax sheltered annuities;

*   stock ownership plans;

*   non-qualified plans of deferred compensation;

*   pension plans for partners;

*   military pension and disability income plans;

*   credit disability insurance;

*   franchise disability income plans;

- a retirement plan from another Employer;
- individual retirement accounts (IRA).

## What If Subtracting Deductible Sources of Income Results in a Zero Benefit? (Minimum Benefit)

The minimum monthly payment is $100.00.

Prudential may apply this amount toward an outstanding overpayment.

## What Happens When You Receive Certain Increases from Deductible Sources of Income?

Once Prudential has subtracted any deductible source of income from your gross disability payment, Prudential will not further reduce your payment:

- due to a cost of living increase from that source; or
- by the amount of any increase in your Social Security income.

## What If Prudential Determines that You May Qualify for Deductible Income Benefits?

If we determine that you may qualify for benefits under item 1, 2 or 3 in the deductible sources of income section, we will estimate your entitlement to these benefits. We can reduce your payment by the estimated amount if such benefits have not been awarded.

However, we will NOT reduce your payment by the estimated amount under item 1, 2 or 3 in the deductible sources of income section if you:

- apply for the benefits;
- appeal any denial to all administrative levels Prudential feels are necessary; and
- sign Prudential's Reimbursement Agreement form. This form states that you promise to pay us any overpayment caused by an award.

If your payment has been reduced by an estimated amount, your payment will be adjusted when we receive proof:

- of the amount awarded; or
- that benefits have been denied and all appeals Prudential feels are necessary have been completed. In this case, a lump sum refund of the estimated amount will be made to you.

## What Happens If You Receive a Lump Sum Payment?

If you receive a lump sum payment from any deductible source of income, the lump sum will be pro-rated on a monthly basis over the time period for which the sum was given. If no time period is stated, we will use a reasonable one.

83500
CBI-LTD-1049

**DML 00029**

(S-3)(23403-LTD

## How Long Will Prudential Continue to Send You Payments?

Prudential will send you a payment each month up to the *maximum period of payment*. Your maximum period of payment is:

| Your Age on Date Disability Begins | Your Maximum Benefit Duration |
|---|---|
| Under age 60 | To your normal retirement age*, but not less than 60 months |
| Age 60 but under age 65 | 54 months |
| Age 65 but under age 70 | 30 months |
| Age 70 but under age 75 | 18 months |
| Age 75 or older | 12 months |

**\*Your normal retirement age is your retirement age under the Social Security Act where retirement age depends on your year of birth.**

We will stop sending you payments and your claim will end on the earliest of the following:

1. During the first 24 months of payments, when you are able to work in your regular occupation on a *part-time basis* but you choose not to; after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to.

2. The end of the maximum period of payment.

3. The date you are no longer disabled under the terms of the plan.

4. The date you fail to submit proof of continuing disability satisfactory to Prudential.

5. The date your disability earnings exceed the amount allowable under the plan.

6. The date you die.

7. The date you decline to participate in a rehabilitation program that Prudential considers appropriate for your situation and that is approved by your doctor.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one period of disability.

*Part-time basis* means the ability to work and earn 20% or more of your indexed monthly earnings.

## What Disabilities Have a Limited Pay Period Under Your Plan?

Disabilities due to a sickness or injury which, as determined by Prudential, are primarily based on *self-reported symptoms* have a limited pay period during your lifetime. 24 months

Disabilities which, as determined by Prudential, are due in whole or part to *mental illness* also have a limited pay period during your lifetime.

The limited pay period for self-reported symptoms and mental illness combined is 24 months during your lifetime.

Prudential will continue to send you payments for disabilities due in whole or part to mental illness beyond the 24 month period if you meet one or both of these conditions:

1. If you are **confined** to a **hospital or institution** at the end of the 24 month period, Prudential will continue to send you payments during your **confinement**.

   If you are still disabled when you are discharged, Prudential will send you payments for a recovery period of up to 90 days.

   If you become reconfined at any time during the recovery period and remain confined for at least 14 days in a row, Prudential will send payments during that additional confinement and for one additional recovery period up to 90 more days.

2. In addition to item 1, if, after the 24 month period for which you have received payments, you continue to be disabled and subsequently become confined to a hospital or institution for at least 14 days in a row, Prudential will send payments during the length of the confinement.

Prudential will not pay beyond the limited pay period as indicated above, or the maximum period of payment, whichever occurs first.

Prudential will not apply the mental illness limitation to dementia if it is a result of:

- stroke;
- trauma;
- viral infection;
- Alzheimer's disease; or
- other conditions not listed which are not usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Self-reported symptoms** means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

**Mental illness** means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive or bipolar illness, anxiety, somatization, substance related disorders and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

**Confined or confinement** for this section means a hospital stay of at least 8 hours per day.

**Hospital or institution** means an accredited facility licensed to provide care and treatment for the condition causing your disability.

## What Disabilities Are Not Covered Under Your Plan?

Your plan does not cover any disabilities caused by, contributed to by, or resulting from your:

- intentionally self-inflicted injuries;
- active participation in a riot; or
- commission of a crime for which you have been convicted under state or federal law.

Your plan does not cover a disability which:

- begins within 12 months of the date your coverage under the plan becomes effective; and
- is due to a pre-existing condition.

Your plan does not cover a disability due to war, declared or undeclared, or any act of war.

Prudential will not make a payment for any period of disability during which you are incarcerated as a result of a conviction.

## What Is a Pre-Existing Condition?

You have a pre-existing condition if:

1. You received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines, or followed treatment recommendation in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available; or

2. You had symptoms for which an ordinarily prudent person would have consulted a health care provider in the 3 months just prior to your effective date of coverage or the date an increase in benefits would otherwise be available.

## How Does a Pre-Existing Condition Affect an Increase in Your Benefits?

If there is an increase in your benefits due to an amendment of the plan; or your enrollment in another plan option, a benefit limit will apply if your disability is due to a pre-existing condition.

You will be limited to the benefits you had on the day before the increase if your disability begins during the 12 month period starting with the date the increase in benefits would have been effective. The increase will not take effect until your disability ends.

## How Does the Pre-Existing Condition Work If You Were Covered Under Your Employer's Prior Plan?

Special rules apply to pre-existing conditions, if this long term disability plan replaces your Employer's prior plan and:

- you were covered by that plan on the day before this plan became effective; and
- you became covered under this plan within thirty-one days of its effective date.

The special rules are:

1.  If the Employer's prior plan did not have a pre-existing condition exclusion or limitation, then a pre-existing condition will not be excluded or limited under this plan.

2.  If the Employer's prior plan did have a pre-existing condition exclusion or limitation, then the limited time does not end after the first 12 months of coverage. Instead it will end on the date any equivalent limit would have ended under the Employer's prior plan.

3.  If the change from your Employer's prior plan to this plan of coverage would result in an increase in your amount of benefits, the benefits for your disability that is due to a pre-existing sickness or injury will not increase. Instead the benefits are limited to the amount you had on the day before the plan change.

## What Happens If You Return to Work Full time and Your Disability Occurs Again?

If you have a *recurrent disability*, as determined by Prudential, we will treat your disability as part of your prior claim and you will not have to complete another elimination period if:

*   you were continuously insured under this plan for the period between your prior claim and your current disability; and

*   your recurrent disability occurs within 6 months of the end of your prior claim.

Your recurrent disability will be subject to the same terms of the plan as your prior claim. Any disability which occurs after 6 months from the date your prior claim ended will be treated as a new claim. The new claim will be subject to all of the plan provisions.

If you become covered under any other group long term disability plan, you will not be eligible for payments under the Prudential plan.

*Recurrent disability* means a disability which is:

*   caused by a worsening in your condition; and

*   due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

# Long Term Disability Coverage

## OTHER BENEFIT FEATURES

### What Benefits Will be Provided to Your Family If You Die? (Survivor Benefit)

When Prudential receives proof that you have died, we will pay your *eligible survivor* a lump sum benefit equal to 6 months of your gross disability payment if, on the date of your death:

- your disability had continued for 180 or more consecutive days; and

- you were receiving or were entitled to receive payments under the plan.

If you have no eligible survivors, payment will be made to your estate.

However, we will first apply the survivor benefit to any overpayment which may exist on your claim.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

# Long Term Disability Coverage

## CLAIM INFORMATION

### When Do You Notify Prudential of a Claim?

We encourage you to notify us of your claim as soon as possible, so that a claim decision can be made in a timely manner. Written notice of a claim should be sent within 30 days after the date your disability begins. However, you must send Prudential written proof of your claim no later than 90 days after your elimination period ends. If it is not possible to give proof within 90 days, it must be given no later than 1 year after the time proof is otherwise required except in the absence of legal capacity.

The claim form is available from your Employer, or you can request a claim form from us. If you do not receive the form from Prudential within 15 days of your request, send Prudential written proof of claim without waiting for the form.

You must notify us immediately when you return to work in any capacity.

### How Do You File a Claim?

You and your Employer must fill out your own section of the claim form and then give it to your attending doctor. Your doctor should fill out his or her section of the form and send it directly to Prudential.

### What Information Is Needed as Proof of Your Claim?

Your proof of claim, provided at your expense, must show:

(1) That you are under the *regular care* of a *doctor*.

(2) The appropriate documentation of your monthly earnings.

(3) The date your disability began.

(4) Appropriate documentation of the disabling disorder.

(5) The extent of your disability, including restrictions and limitations preventing you from performing your regular occupation or gainful occupation.

(6) The name and address of any hospital or institution where you received treatment, including all attending doctors.

(7) The name and address of any doctor you have seen.

We may request that you send proof of continuing disability, satisfactory to Prudential, indicating that you are under the regular care of a doctor. This proof, provided at your expense, must be received within 30 days of a request by us.

In some cases, you will be required to give Prudential authorization to obtain additional medical information, and to provide non-medical information as part of your proof of claim, or proof of continuing disability. Prudential will deny your claim or stop sending you payments if the appropriate information is not submitted.

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including, but not limited to, you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

## Who Will Prudential Make Payments To?

Prudential will make payments to you.

## What Happens If Prudential Overpays Your Claim?

Prudential has the right to recover any overpayments due to:

- fraud;

- any error Prudential makes in processing a claim; and

- your receipt of deductible sources of income.

You must reimburse us in full.  We will determine the method by which the repayment is to be made.

Prudential will not recover more money than the amount we paid you.

## What Are the Time Limits for Legal Proceedings?

You can start legal action regarding your claim 60 days after proof of claim has been given and up to 3 years from the time proof of claim is required, unless otherwise provided under federal law.

## How Will Prudential Handle Insurance Fraud?

Prudential wants to ensure you and your Employer do not incur additional insurance costs as a result of the undermining effects of insurance fraud. Prudential promises to focus on all means necessary to support fraud detection, investigation and prosecution.

In some jurisdictions, if you knowingly and with intent to defraud Prudential, file an application or a statement of claim containing any materially false information or conceal for the purpose of misleading, information concerning any fact material thereto, you commit a fraudulent insurance act, which is a crime and subjects you to criminal and civil penalties. These actions will result in denial or termination of your claim, and, where such laws apply, are subject to prosecution and punishment to the full extent under any applicable law. Prudential will pursue all appropriate legal remedies in the event of insurance fraud.

# Long Term Disability Coverage

## OTHER SERVICES

### How Can Prudential Help Your Employer Identify and Provide Worksite Modification?

A worksite modification might be what is needed to allow you to perform the material and substantial duties of your regular occupation with your Employer. One of our designated professionals will assist you and your Employer to identify a modification we agree is likely to help you remain at work or return to work. This agreement will be in writing and must be signed by you, your Employer and Prudential.

When this occurs, Prudential will reimburse your Employer for the cost of the modification up to the greater of:

- $1,000; or

- the equivalent of 2 months of your monthly benefit.

This benefit is available to you on a one time only basis.

### How Can Prudential's Rehabilitation Program Help You Return to Work?

Prudential has a rehabilitation program available. A rehabilitation program means a program designed to assist you to return to work.

As your file is reviewed, medical and vocational information will be analyzed to determine if rehabilitation services might help you return to work.

Once the initial review is completed by our rehabilitation program specialists working along with your doctor and other appropriate specialists, Prudential may elect to offer you and pay for a return to work program. If the return to work program is not developed by Prudential's rehabilitation program specialists, you must receive written approval from Prudential for the program before it begins.

The return to work program may include, but is not limited to, the following services:

- coordination with your Employer to assist you to return to work;

- evaluation of adaptive equipment to allow you to work;

- child care during your return-to-work program;

- vocational evaluation to determine how your disability may impact your employment options;

- job placement services;

- resume preparation;

- job seeking skills training;

- retraining for a new occupation; or

- assistance with relocation that may be part of an approved return to work program.

If at any time, you decline to take part in or cooperate in a rehabilitation evaluation/assessment or program that Prudential feels is appropriate for your disability and that has been approved by your Doctor, we will cease paying your monthly benefit.

## How Can Prudential's Social Security Claimant Assistance Program Help You With Obtaining Social Security Disability Benefits?

Prudential can arrange for expert advice regarding your Social Security disability benefits claim and assist you with your application or appeal, if you are disabled under the plan.

Receiving Social Security disability benefits may enable:

- you to receive Medicare after 24 months of disability payments;

- you to protect your retirement benefits; and

- your family to be eligible for Social Security benefits.

We can assist you in obtaining Social Security disability benefits by:

- helping you find appropriate legal representation;

- obtaining medical and vocational evidence; and

- reimbursing pre-approved case management expenses.

DML 00039

(S-1)

# Glossary

*Active employment* means you are working for your Employer for earnings that are paid regularly and that you are performing the material and substantial duties of your regular occupation. Full-time Employees must be working at least 36 ¼ hours per week. Part-time Employees must be working at least 20 hours per week.

Your worksite must be:

- your Employer's usual place of business;

- an alternate work site at the direction of your Employer other than your home unless clear specific expectations and duties are documented; or

- a location to which your job requires you to travel.

Normal vacation is considered active employment.

Temporary and seasonal workers are excluded from coverage.

Individuals whose employment status is being continued under a severance or termination agreement will not be considered in active employment.

*Confined or confinement* for this section means a hospital stay of at least 8 hours per day.

*Contract Holder* means the Employer to whom the Group Contract is issued.

*Deductible sources of Income* means income from deductible sources listed in the plan which you receive or are entitled to receive while you are disabled. This income will be subtracted from your gross disability payment.

*Disability earnings* means the earnings which you receive while you are disabled and working, plus the earnings you could receive if you were working to your greatest extent possible as explained in the plan. Salary continuance will not be included as disability earnings since it is not payment for work performed.

*Doctor* means:

a person who is performing tasks that are within the limits of his or her medical license; and

- is licensed to practice medicine and prescribe and administer drugs or to perform surgery; or

- has a doctoral degree in Psychology (Ph.D. or Psy.D.) whose primary practice is treating patients; or

- is a legally qualified medical practitioner according to the laws and regulations of the governing jurisdiction.

Prudential will not recognize any relative including but not limited to you, your spouse, or a child, brother, sister, or parent of you or your spouse as a doctor for a claim that you send to us.

*Eligible survivor* means your spouse, if living; otherwise, your children under age 25.

83500
CGL-1001

DML 00040

(S-8)(23403-LTD)

*Elimination period* means a period of continuous disability which must be satisfied before you are eligible to receive benefits from Prudential.

*Employee* means a person who is in active employment with the Employer for the minimum hours requirement.

*Employer* means the Contract Holder, and includes any division, subsidiary or affiliate who is reported to Prudential in writing for inclusion under the Group Contract, provided that Prudential has approved such request.

*Employment waiting period* means the continuous period of time that you must be in a covered class before you are eligible for coverage under a plan  The period must be agreed upon by the Employer and Prudential.

*Evidence of Insurability* means a statement of your medical history which Prudential will use to determine if you are approved for coverage.  Evidence of Insurability will be provided at your own expense.

*Gainful occupation* means an occupation, including self employment, that is or can be expected to provide you with an income equal to at least 60% for Option I or 70% for Option II, of your indexed monthly earnings within 12 months of your return to work.

*Gross disability payment* means the benefit amount before Prudential subtracts deductible sources of income and disability earnings.

*Hospital or institution* means an accredited facility licensed to provide care and treatment for the condition causing your disability.

*Indexed monthly earnings* means your monthly earnings adjusted on each July 1 provided you were disabled for all of the 12 months before that date.  Your monthly earnings will be adjusted on that date by the lesser of 10% or the current annual percentage increase in the Consumer Price Index.  Your indexed monthly earnings may increase or remain the same, but will never decrease.

The Consumer Price Index (CPI-W) is published by the U.S. Department of Labor.  Prudential reserves the right to use some other similar measurement if the Department of Labor changes or stops publishing the CPI-W.

Indexing is only used to determine your percentage of lost earnings while you are disabled and working.

*Injury* means a bodily injury that is the direct result of an accident and not related to any other cause. Injury which occurs before you are covered under the plan will be treated as a sickness.  Disability must begin while you are covered under the plan.

*Insured* means any person covered under a coverage.

*Law, plan or act* means the original enactment of the law, plan or act and all amendments.

*Layoff or leave of absence* means you are temporarily absent from active employment for a period of time that has been agreed to in advance in writing by your Employer, other than for reasons in connection with any severance or termination agreement.  Your normal vacation time, any period of disability or FMLA leave is not considered a temporary layoff.

*Material and substantial duties* means duties that:

- are normally required for the performance of your regular occupation; and

- cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

*Maximum period of payment* means the longest period of time Prudential will make payments to you for any one disability.

*Mental illness* means a psychiatric or psychological condition regardless of cause. Mental illness includes but is not limited to schizophrenia, depression, manic depressive, or bipolar illness, anxiety, somatization, substance related disorders, and/or adjustment disorders or other conditions. These conditions are usually treated by a mental health provider or other qualified provider using psychotherapy, psychotropic drugs, or other similar methods of treatment as standardly accepted in the practice of medicine.

*Monthly benefit* means the total benefit amount for which an employee is insured under this plan subject to the maximum benefit.

*Monthly earnings* means your gross monthly income from your Employer as defined in the plan.

*Monthly payment* means your payment after any deductible sources of income have been subtracted from your gross disability payment.

*Part-time basis* means the ability to work and earn 20% or more of your indexed monthly earnings.

*Payable claim* means a claim for which Prudential is liable under the terms of the Group Contract.

*Plan* means a line of coverage under the Group Contract.

*Pre-existing condition* means:

- a condition for which you received medical treatment, consultation, care or services including diagnostic measures, took prescribed drugs or medicines or followed treatment recommendation for your condition during the given period of time as stated in the plan; or

- you had symptoms for which an ordinarily prudent person would have consulted a health care provider during the given period of time as stated in the plan.

*Recurrent disability* means a disability which is:

- caused by a worsening in your condition; and

- due to the same cause(s) as your prior disability for which Prudential made a Long Term Disability payment.

*Regular care* means:

- you personally visit a doctor as frequently as is medically required, according to generally accepted medical standards, to effectively manage and treat your disabling condition(s); and

- you are receiving the most appropriate treatment and care, which conforms with generally accepted medical standards, for your disabling condition(s) by a doctor whose specialty or experience is the most appropriate for your disabling condition(s), according to generally accepted medical standards.

*Regular occupation* means the occupation you are routinely performing when your disability occurs. Prudential will look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location.

*Retirement plan* means a defined contribution plan or defined benefit plan. These are plans which provide retirement benefits to employees and are not funded entirely by employee contributions.

*Self-reported symptoms* means the manifestations of your condition, which you tell your doctor, that are not verifiable using tests, procedures and clinical examinations standardly accepted in the practice of medicine. Examples of self-reported symptoms include, but are not limited to headache, pain, fatigue, stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy.

*Sickness* means any disorder of your body or mind, but not an injury; pregnancy including abortion, miscarriage or childbirth. Disability must begin while you are covered under the plan.

*We, us, and our* means The Prudential Insurance Company of America.

*You* means a person who is eligible for Prudential coverage.

83500
CGL-1001

DML 00043

(S-8)(23403-LTD)

**The Summary Plan Description**

**is not part of the**

**Group Insurance Certificate.**

**It has been provided by**

**your Employer and included in**

**your Booklet-Certificate**

**upon the Employer's request.**

DML 00044

(23403)

# SUMMARY PLAN DESCRIPTION

This booklet is intended to comply with the disclosure requirements of the regulations issued by the U.S. Department of Labor under the Employee Retirement Income Security Act (ERISA) of 1974. ERISA requires that you be given a "Summary Plan Description" which describes the plan and informs you of your rights under it.

**Plan Name**

State Street Bank and Trust Company
Long Term Disability Coverage for all Employees

**Type of Plan**

Employee Welfare Benefit plan providing Long Term Disability Coverage

**Plan Sponsor**

State Street Bank and Trust Company
225 Franklin Street
Boston, Massachusetts  02210-2804

**Employer Identification Number**

04-2456637

**Plan Number**

504

**Plan Administrator**

State Street Bank and Trust Company
225 Franklin Street
Boston, Massachusetts  02210-2804

**Agent for Service of Legal Process**

State Street Bank and Trust Company
Attention: Human Resources
225 Franklin Street
Boston, Massachusetts  02210-2804

**Plan's Fiscal Year Ends**

December 31

**Plan Costs**

At present, the premiums for the Plan are paid by the Employer and Employees.

DML 00045

(23403)

**Continuation of the Plan**

It is intended that this plan will be continued for an indefinite period of time; however, the Company reserves the right to change or terminate the plan or change the insurance carrier, in accordance with the law.

**Plan Benefits Provided by**

The Prudential Insurance Company of America
Prudential Plaza
Newark, New Jersey 07101

**Loss of Benefits**

You must continue to be a member of the class to which this Plan pertains and continue to make any of the contributions agreed to when you enroll. Failure to do so may result in partial or total loss of your benefits. In addition, the employer maintains the right to modify or terminate the Plan.

**Review of Claim Denial**

If a claim is denied, you or your authorized representative should receive within 90 days a written notice stating the basis for the denial. You will then be entitled, upon written request, to a review of that claim decision by Prudential. If you are not notified within 90 days, this may be considered a claim denial and you will be entitled to a review as described above.

Specific information regarding this review procedure can be obtained from your employer.

**Rights and Protections**

As a participant in this Plan, you are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

(1) Examine, without charge, at the plan administrator's office all plan documents, including insurance contracts, collective bargaining agreements and copies of all documents filed by the plan with the U.S. Department of Labor, such as detailed annual reports and plan descriptions.

(2) Obtain copies of all plan documents and other plan information upon written request to the plan administrator. The administrator may make a reasonable charge for the copies.

(3) Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

In addition to creating rights for plan participants, ERISA imposed duties upon the people who are responsible for the operation of this plan. The people who operate your plan, called "fiduciaries" of the plan, have a duty to do so prudently and in the interest of you and the other plan participants and beneficiaries.

No one, including your employer, your union, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

If your claim for a welfare benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the plan review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may file suit in a state or federal court. If it should happen that plan fiduciaries misuse the plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful, the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous. If you have any questions about your plan, you should contact the plan administrator.

If you have any questions about this statement or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

DML 00047

(23403)

Internal Employability Review

37 year old female out of work since April 4, 2000 secondary to no union tibial osteotomy, S/P Both Knee Arthroscopy, Tibial Plateau elevation and revision, chondromalacia, Injury to tibial vessels.

Ms. Madden's permanent restrictions are (as provided by Dr. Richmond) sitting up to 6 hours per day, walking 1 hr with rest, standing 1 hr with rest, carrying 10 lbs. Ms. Madden has also been restricted from climbing, bending, squatting. Dr. Richmond also indicated that these restrictions are permanent.

Ms. Madden's own occupation at the time of injury was that of VP sales - after review of job description, it was determined that the job was matched by a combination of DOT titles: Registered representative; 250.257-018, sedentary & Sales Representative, Financial Services; 250.257-022, Light. Ms. Madden earned $8678.00/month or $50.07/hr. Any occ date is October 3, 2002 and gainful wages $62481.59/yr or $30.03/hr (60% of preinjury wages).

Education: Ms. Madden has bachelor's degree in psychology.

Past work history: Ms. Madden worked in Nynex as a part of Customer services and has indicated that she excelled at it, She then worked for IBM, underwent extensive training in sales and marketing, customer services and was handling big accounts. Then moved to Boston and started working for ER.

Ms. Madden was offered vocational services through her o/o phase initially in March, 2001, she indicated that she was not medically ready to handle voc and subsequently also had procedure. VR was reopened in April, 2002 and extensive research was done to locate employment options within o/o phase. Occupations were selected and researched on the following criteria was still in o/o: Gainful wage was 70-80 % of pre injury earnings, she had expressed interest in social work, focus was also in sales - for her to earn high wage, sales options all involved traveling. Retraining was also considered to improve employability. However no options have been determined as of yet.

However, a/o is upcoming in October, 2002 and transferable skills analysis was conducted utilizing Oasys Software.

Occupations were filtered for 10% or more growth rate in Massachusetts. Based on Ms. Madden's past work experience and physical capabilities, 171 occupations were identified; 6 with closest transferability, 19 with good transferability and 146 with fair transferability. Further research was done on selected occupations for wage information utilizing ERI (July 2002). Occupations were selected by reviewing job tasks and occupations selected by reviewing job tasks and only occupations that may appear similar to her work experience were selected. ERI data re wage is specific for Boston, Massachusetts (Ms. Madden lives approximately 26 miles from Boston). The wage data with levels of exertion are as follows :

1.    Securities Trader, sedentary, $95,722/yr
2.    Registered Representative, sedentary $64,448/yr
3.    Banking, Loan Officer, General, sedentary, $65,279/yr
4.    Customer Service Supervisor, sedentary, $57,806/yr

DML 00048