THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBORAH M. LUMBARD,<br>    Plaintiff,<br><br>v.<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY,<br>    Defendants | C.A. NO. 05-CV-11124PBS |

### DEFENDANTS', THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY, MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON THE RECORD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, The Prudential Insurance Company of America and State Street Bank and Trust Company (hereinafter collectively referred to as "Prudential" unless otherwise specifically referred to as "State Street") submits this memorandum of law in support of their motion for summary judgment on the record.

**PROCEDURAL HISTORY**

Plaintiff, Deborah M. Lumbard[1] ("Lumbard"), filed suit on or about May 31, 2005 in the United States District Court for the District of Massachusetts to recover long term disability benefits under a group insurance policy issued by Prudential to the Plaintiff's employer, State Street Bank and Trust Company ("State Street"). In her Complaint, Lumbard sought to recover benefits under the Plan through ERISA's civil enforcement provision, 29 U.S.C. 1132(a)(1)(B);

---

[1] The majority of the documents contained in the proposed administrative record refer to "Deborah Madden," which the name used by Plaintiff in her dealings with the defendants prior to the filing of the instant litigation. To avoid confusion Prudential refers to the Plaintiff as either "___" or "Lumbard" in this memorandum.

1

ERISA § 502(a)(1)(B). Compl. ¶¶18-21.  The parties agree that the Plaintiff's claims relate to an employee welfare benefit plan and are governed by the Employee Retirement Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Compl. ¶ 4, 18-21; Answer ¶ 4, 3.  The Plaintiff's claims fall under section 502(a)(1)(B) of ERISA.  *See Wickham v. Northwestern Nat'l Ins. Co.,* 908 F. 2d 1077, 1082 (1st Cir.), *cert. Denied,* 498 U.S. 1013 (1990).[2]

Defendants filed their Amended Answer to Plaintiff's Complaint on June 30, 2005.  On August 16, 2006, Judge Saris held a scheduling conference and the Court adopted the parties' proposed discovery and motion schedule.  The case was referred to mediation which is scheduled for November 16, 2005.  The Defendants' proposed administrative record was filed with the Court on September 13, 2005 and supplemented on October 12, 2005.  No discovery has been conducted prior to the submission of motions for summary judgment.

## SUMMARY OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The Plaintiff filed this action seeking long term disability benefits under Group Contract No. GW-23403 issued by Prudential to State Street, which is an employee welfare benefit plan governed by ERISA.  State Street sponsored and administered the Long Term Disability Insurance Plan ("Plan"), Ex. 2[3], Answer ¶6. Prudential underwrites the plan's long-term disability benefits and it serves as the claims administrator of claims submitted by plan participants for long term disability benefits. Ex. 2, Answer ¶ 6.

Prudential contends that because the Plan grants it discretionary authority to determine

---

[2] With respect to civil actions brought by Plan participants or beneficiaries to recover plan benefits, 29 U.S.C. §1132 provides, in part, as follows:
    (a)    A civil action may be brought --
            (1)  by a participant or beneficiary --…
    (B)    to recover benefits due him under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan…

[3] Citations to Exhibits refer to the indexed documents contained in the Defendants' Proposed Administrative Record for Judicial Review filed with the Court on September 13, 2005 and supplemented on October 17, 2005.

45698.2

eligibility for benefits, the appropriate standard of review is deferential and is limited to determining whether Prudential's claim decision is arbitrary and capricious, or without rational basis. Under this standard, reviewing courts must uphold Prudential's claim decision if it is within the administrator's authority, reasoned and supported by substantial evidence in the record. Inasmuch as the decision in the instant case on the plaintiff's claim is within Prudential's authority, is reasoned and is supported by substantial evidence in the record, Prudential is entitled to summary judgment on the undisputed facts as a matter of law.

## I. STATEMENT OF MATERIAL FACTS OF RECORD

Pursuant to Local Rule 56.1, Defendants refer the Court to its Statement of Material Facts of Record for a complete factual overview of this matter. For the convenience of the Court, pertinent facts are outlined here. Prudential began paying Plaintiff long term disability benefits on or about October 3, 2000. Answer ¶ 8, Ex. 25.[4] At the time, Plaintiff reported, via her attending physician's statement, suffering from a non-union of tibial osteotomy of the left leg. Ex. 4 and benefits were awarded after receiving medical records which indicated a disability pursuant to the policy provisions. Ex. 25. Plaintiff's initial period of benefits ended on or about October 2, 2002. Ex. 34. On or about August 28, 2002, Prudential determined, based on the medical records and vocational analysis, that Plaintiff no longer met the criteria of total disability as defined by the Plan. Ex. 45. Prudential noted that Lumbard's doctor, Dr. Richmond, had placed the following restrictions on Lumbard: sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 111, Ex. 45.

---

[4] Lumbard was paid short term disability benefits from April 2000-August 2000. Ex. 8. Lumbard appealed Prudential's decision to discontinue short term disability benefits and also filed a claim for long term disability benefits on or about November 27, 2000. Ex. 15. Prudential denied the claim for LTD benefits based on Lumbard's failure to meet the elimination period contained in the policy. Ex. 17. After receiving Lumbard's request for reconsideration, Lumbard was awarded benefits retroactive to October 3, 2000. Ex. 24.

3

Based on these restrictions, a transferable skills analysis ("TSA") was performed which concluded that based on Lumbard's education, experience, training and physical abilities, Lumbard could perform several gainful jobs including Securities Trader, Registered Representative, Banking, Loan Officer, Customer Service Supervisor. Ex. 135, Ex. 45. Accordingly, Prudential informed Plaintiff that she would no longer receive benefit payments after October 2, 2002. Ex. 45.

Prudential acknowledged receipt of Lumbard's request for reconsideration for her claim on January 30, 2003 and undertook a further evaluation of her claim. Ex. 60. After its review, Prudential upheld its decision to discontinue benefits on February 14, 2003. Ex. 62. Prudential based its decision on the provisions of the Group policy, GW-23403, and its review of statements from Lumbard, her physicians, her employer, medical records and information about Lumbard's occupation. Ex. 62. With regard to the policy provisions, Prudential specifically addressed the criteria and definition of total disability, the definition of material and substantial duties, and the definitions of regular and gainful occupation in its decision on Lumbard's request for reconsideration. Ex. 62. Again, Prudential noted that Lumbard's doctor, Dr. Richmond, had recommended permanent restrictions on Lumbard including sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 62, Ex. 111. Prudential determined that based on the job description provided by her employer, Lumbard's job was matched by a combination of two Dictionary of Occupational titles ("DOT"), Registered Representative and Sales Representative, Financial Services. Ex. 62. Prudential considered the DOT definition of occupation and DOT occupational descriptions. Ex. 62. Based on this information, Prudential concluded that Lumbard was not disabled within the provisions of the policy as she could earn a gainful wage within 12 months of her return to work, that Lumbard

had the ability to perform the material and substantial duties of any occupation, including her own position at State Street, as her restrictions and limitations fell within the requirements of that occupation. Ex. 62.

Lumbard then submitted her second formal appeal to Prudential on or about July 31, 2003. Ex. 65. In connection with the appeal, Lumbard submitted and relied on a Vocation Analysis prepared by Robert Violetta, MS, CRC, CDMS. Ex. 64, Ex. 65. As part of its review of Lumbard's second request for reconsideration, Prudential had a TSA and Labor Market Survey conducted by an outside evaluator, Amy Vercillo, CRC CDMS of Rehabilitation and Re-Employment, Inc., and a report was provided to Prudential on or about September 15, 2003. Ex. 69. The results of the TSA indicated that several occupations were identified that were appropriate to Lumbard's education, training and experience, were within her physical limitations and restrictions and were gainful occupations: Manager, Customer Services; Marketing Manager; Manager, Sales; Sales Manager, Department; and Marketing/Sales Manager-Finance. Ex. 69. The results of the Labor Market Survey indicated that the positions identified by the TSA were available within Lumbard's local labor market (a fifty (50) mile radius from her home). Ex. 69.

On or about October 2, 2003, Prudential informed Lumbard of its decision to uphold its original determination discontinuing Lumbard's benefits as of October 2, 2002. Ex. 74. Again, Prudential outlined the specific policy provisions it reviewed in making its decision; the criteria and definition of total disability, the definition of material and substantial duties, and the definitions of regular and gainful occupation in its decision on Lumbard's request for reconsideration. Ex. 74. Again, Prudential noted that Lumbard's doctor, Dr. Richmond, had recommended permanent restrictions on Lumbard including sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 74,

Ex. 111. Prudential also noted that Lumbard did not submit any documentation to Prudential relating to Lumbard's ongoing medical condition or treatment. Ex. 74. Prudential addressed the various issues raised by Lumbard as part of her appeal including Prudential's previous vocational assessment and the criteria of disability and gainful occupation. Ex. 74. Based on the vocational assessment performed by Amy Vercillo and the occupations identified by Ms. Vercillo which were located within the labor market where Lumbard resided, Prudential determined that sedentary, transferable occupations were available to Lumbard within her physical limitations thus making Lumbard not disabled from any gainful occupation as outlined in the Group Policy. Ex. 74.

Lumbard submitted her third and final appeal to Prudential on or about December 23, 2004, over a year after Prudential's decision on the second request for reconsideration. Ex. 77. Lumbard provided Prudential with the decision of an Administrative Law Judge at the Social Security Administration, exhibits provided to the ALJ, a letter from Dr. Richmond, and a vocational analysis report prepared by Robert Violetta in support of her appeal. Ex. 77. As part of its review of the third appeal, Prudential retained William D. Abraham, M.D., Orthopedic Surgeon, of Reed Review Services to review Lumbard's medical records. On June 8, 2005, Prudential made its final determination on Lumbard's third appeal and notified her counsel of its decision. Ex. 91. Prudential upheld its decision to discontinue benefits as of October 2, 2002. Ex. 91. Prudential referred to its prior decision letters of August 28, 2002, February 14, 2003 and October 2, 2003 for a complete explanation of its decision. Ex. 91. Prudential noted that in Lumbard's third appeal, Lumbard claimed to be unable to consistently perform sedentary work based on the restrictions prescribed by Dr. Richmond, her prior medical history and reports of chronic pain. Ex. 91. Prudential outlined the results of the medical record review performed by

Dr. Abraham, notably that Dr. Abraham found that based on the documentation provided, Lumbard possessed sedentary work capacity as of October 3, 2002. Ex. 91.  Prudential reiterated that the TSA and Labor Market survey performed by Amy Vercillo was based on the information provided by Lumbard and information provided by Lumbard's employer.  Ex. 91.  Prudential noted that the occupations identified by the TSA and Labor Market survey were sedentary in nature and did not require more than 1 hour per day of walking or standing. Ex. 91.  Prudential acknowledged that Lumbard may experience symptoms and continue treatment for her condition however; Prudential determined that the medical evidence did not support a sickness or injury which would preclude her from performing the material and substantial duties of a sedentary occupation.  Ex. 91.

## II.   ARGUMENT

**A.  An ERISA Action is Ripe for Resolution by Summary Judgment Where the Standard of Review is Arbitrary and Capricious.**

When an arbitrary and capricious standard of review applies and review is based solely upon an agreed upon record, summary judgment is merely a mechanism for tendering the issues and no special inferences as to be drawn in favor of Plaintiff resisting summary judgment.  Liston v. Unum Corp. Officer Severance Plan, 330 F. 3d 19, 24 (1st Cir. 2003).  ERISA denial of benefit actions often are decided at the summary judgment stage. Twomey, 328 F.3d 27, 31 (1st Cir. 2003); Terry, 145 F.3d 28, 30 (1st Cir. 1998); McMahon v. Digital Equipment Corp., 162 F.3d 28, 39 (1st Cir. 1998). While Plaintiff may contend that there is contrary evidence regarding her disability, such contention does not change this analysis. Terry, 145 F.3d at 45.  "[T]he facts of record, even viewed in the light most favorable to plaintiff, would be insufficient to convince any

7

reasonable fact finder that [Prudential] acted arbitrarily and capriciously in determining that plaintiff was not entitled to Long Term Disability benefits." Karamshahi v. Northeast Utilities Service Co., 41 F. Supp. 2d 101, 103 (D. Mass. 1999).

Where de novo review applies, the ordinary standard of summary judgment applies to an ERISA action. Hughes v. Boston Mutual Life Insurance Company, 26 F.3d 264, 268 (1st Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In this case, the Plaintiff bears the burden of making a showing sufficient to establish that Prudential's decision to discontinue LTD benefits was unreasonable. Terry v. Bayer, 145 F.3d 28 (1st Cir. 1998).

In accordance with Rule 56(c), this Court should grant Defendants' motion for summary judgment because, as will be shown below, there are no issues of fact material to the plaintiff's claim.

**B. The Applicable Standard of Review of Prudential's Claim Decision Is Whether The Decision Was Arbitrary and Capricious Or An Abuse of Discretion Based on the Record Before Prudential At The Time It Made Its Decision.**

1. Standard of Review

Judicial review in this matter is limited to determining whether Prudential's decision was arbitrary and capricious or without rational basis. The Supreme Court has determined that "a denial of benefits challenged under §502(a)(1)(B) of ERISA, §1132(a)(1)(B), is to be reviewed

under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone v Tire & Rubber Co., v. Bruch, 489 U.S. 101, 115 (1989); Sullivan v. Raytheon Co., 262 F. 3d 41 (1st Cir. 2001); Pari-Fasano v. ITT Hartford Life & Accident Ins., Co., 230 F. 3d 414, 418 (1st Cir. 2000); Terry, supra, 145 F.3d at 35.  When a clear discretionary grant is found, "Firestone and its progeny mandate a deferential arbitrary and capricious standard of judicial review." Recupero v. New England Tel. and Tel. Co., 118 F.3d 820, 827 (1st Cir. 1997).

The Plan specifically provides that Prudential is the ultimate decision-maker when it comes to benefit determinations and specifically provides that "Total Disability" exists when Prudential determines that certain conditions are met during the initial period of disability and after the initial period of disability.[5]  Based on the foregoing, it is beyond any reasonable dispute that the Plan and the Committee granted Prudential "discretionary authority to determine eligibility for benefits and to construe the terms of the Plan." Firestone, supra.  The language [of the Plan] mentioned above admits of no other interpretation. Terry, supra at 37.

Because the Plan affords Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, Prudential's decision must be upheld unless it is arbitrary, capricious, or an abuse of discretion. Sullivan v. Raytheon Co., 262 F.3d 41(1st Cir.

---

[5]The Plan provides as follows: "You are disabled <u>when Prudential determines</u> that:

- You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- You have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payment, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.  (See Ex. 2).

2001). Previously, this District has interpreted the particular policy language at issue here ("[y]ou are disabled when Prudential determines that…") and held that the language was sufficient to grant Prudential discretionary authority thereby applying the arbitrary and capricious standard of review. For example, Judge Stearns, ruled that the "[y]ou are disabled when Prudential determines that…" language was sufficient to grant Prudential authority and discretion and ruled that the applicable standard of review was arbitrary and capricious. *McLaughlin v. The Prudential Insurance Company of America*, 2004 U.S. Dist. LEXIS 9313 (D. Mass. 2004*); See also McEleney v. The Prudential Insurance Company of America*, C.A. No.: 02-11666-MEL, Unpublished Endorsement of Judge Lasker, July 21, 2004, (D. Mass. 2004)(holding Plan language was sufficient to grant discretion and ruling that applicable standard of review was arbitrary and capricious), attached hereto as Exhibit 1.

Additionally, the language in the Plan is straightforward and therefore, should be given its natural meaning in an ERISA-regulated policy. Hughes, 26 F.3d 264 (1st Cir. 1994). Furthermore, common sense cannons of contract interpretation can be used to construe ERISA-governed plans. Pizzoti v. Polaroid Corp., 985 F. 2d 13, 14 (1st Cir. 1998). At every stage of benefit determinations, Prudential has the sole authority, control and discretion to make decisions. Therefore, in the instant case, the Plan's precise language makes it clear that Prudential had the authority to make the decision to discontinue Lumbard's benefits, which is at issue in the instant case. Thus, the arbitrary and capricious standard of review should be applied to the instant case.

2. <u>Scope of Review Under Arbitrary and Capricious Standard</u>

When a claims administrator has discretion in administering an ERISA-regulated

employee benefit plan, judicial review is limited to determining whether the administrator's action is arbitrary and capricious or without rational basis. Vlass v. Raytheon Employees Disability Trust, 244 F.3d 27, 29-30 (1st Cir. 2001). The abuse of discretion standard limits the grounds upon which a discretionary claim decision can be disturbed. In reviewing such a decision, a court may not "substitute its judgement" for that of the claim fiduciary. Terry, 145 F.3d at 40. It is for plan fiduciaries, and not courts, to choose between reasonable alternatives involving plan interpretation and administration. Jestings v. New England Telephone & Telegraph Co., 757 F.2d 8, 9 (1st Cir. 1985).

When vested with discretionary authority, it is the claim administrator's responsibility to weigh conflicting evidence. Vlass, 244 F.3d at 32. It is the claim administrator's responsibility to make factual findings relating to a claimant's condition. Doyle, 144 F.3d at 185. Under the Plan, it is Prudential's duty to determine whether a claimant is able to perform the material and substantial duties of his or her occupation due to sickness or accidental injury. Ex. 2.

When the arbitrary and capricious standard is applied, Prudential's decision can be overturned only if the insurer's eligibility determination was unreasonable in light of the information available to it. Boardman v. The Prudential Insurance Company of America et al., 337 F. 3d 9, 15 (1st Cir. 2003); Pari-Fasano, supra at 419. "Contrarily, the insurer's decision must be upheld if it was within the insurer's authority, reasoned and supported by substantial evidence in the record." See Boardman citing Doyle, supra at 184. "The existence of contrary evidence does not necessarily render Prudential's decision arbitrary." See Boardman citing Vlass, supra at 30.

Because the Plan affords Prudential discretionary authority to determine eligibility for benefits and to construe the terms of the Plan, Prudential's decision must be upheld unless it is

11

arbitrary, capricious, or an abuse of discretion. Sullivan v. Raytheon Co., 262 F.3d 41(1st Cir. 2001).  The focus of this judicial review should be on the final decision made by Prudential in discontinuing Lumbard's claim for long term disability benefits. Orndorf, 404 F.3d 510, 516 (D. Mass. 2005). Here, Prudential made a decision based on the terms and conditions of the Plan, vocational analysis, transferable skills analysis, labor market surveys, the opinions of independent physicians who reviewed the file, and the medical information contained in its file.  The decision letters of Prudential clearly state the reasoning for its initial decision to terminate benefits and the subsequent decisions to uphold its initial determination.  (initial decision-Ex. 45), (first appeal-Ex. 62), (second appeal-Ex. 74), (final appeal-Ex. 91).  Thus, Prudential's decision was clearly reasonable given the information available to it at the time of the decision and should be upheld.

    3.    Record for Review

In an ERISA denial of benefits action, where abuse of discretion is the standard of review, the ordinary rule is that review is limited to the record made before the entity being reviewed, which, in this instance, is Prudential. Liston, 330 F.3d at 23 (1st Cir. 2003). The proper record to be considered by the Court is the record before Prudential when it made its final claim decision. See Kiley v. Travelers Indem. Co., 853 F. Supp. 6, 14 (D. Mass. 1994)("at least in the context of applying deferential standard of review, this Court will limit the record to the facts before [the claims administrator] absent further guidance from the First Circuit")(emphasis added).  In Liston, the First Circuit stated that "at least some very good reason is needed to overcome the strong presumption that the record on review is limited to the record before the administrator." Id.

On September 13, 2005, Defendants filed their Proposed Administrative Record for

45698.2

Judicial Review.[6] The Record contains the documents that were before Prudential when it made its final benefit determination and consists hundreds of pages of documents. The full record for judicial review is now before the Court.

    Plaintiff is expected to argue that the record should not include the third and final decision letter of Prudential, Ex. 91, as Plaintiff filed suit prior to Prudential issuing its final decision. While Prudential acknowledges that it did request two extensions of time to decide the appeal, Prudential was continuing to review Plaintiff's final appeal in good faith. Ex. 83, 85. Prudential requested additional time in which to respond to the third appeal so that it could obtain an outside review of the medical records. Ex. 86. Prudential was waiting for the results of the outside medical review when it made its second request for an extension of time. Ex. 86, 85. Shortly after Prudential made the request for an extension of time, it received the report of Dr. Abraham on May 27, 2005. Ex. 86. Within days of receiving the report of the outside reviewer, Prudential issued its final decision. Ex. 91. However, Plaintiff had already filed suit at the time the final decision was issued. Despite the filing of the instant litigation, this Court's review should focus on the final decision, Ex. 91, as the Ordnorf decision dictates that the focus of judicial review should be on the final decision. Orndorf, 404 F.3d at 516. The final decision in the instant action is Prudential's final decision, Ex. 91, thus this Court should consider that to be the final decision to be reviewed by this Court.

    Plaintiff may also argue that certain documents, such as SOAP notes (Ex.133), should not be included in the record before the Court on the grounds that she did not receive those documents during the Appeals process. The record that has been submitted to the Court is the record which was maintained by Prudential during the entire claims process. The record not only

---

[6] This Record was then amended after conferring with Plaintiff's counsel on or about October 12, 2005.

13

45698.2

includes documents that Prudential relied on, it includes documents maintained in the ordinary course of business. Ignoring the evidence contained in the record, regardless of whether Prudential reviewed and/or relied on in making its decisions, would be contrary to the purposes of judicial review. Cleary v. Knapp Shoes, Inc., 924 F. Supp 309, 315 (USDC-MA 1996)([w]here an adequate administrative record has been created, allowing the development and submission of additional evidence would frustrate ERISA's goal of expeditious resolution of benefit disputes.) Prudential provided Lumbard and her counsel with documents contained in her disability claim file which Prudential reviewed or relied on in the course of its multiple reviews of Lumbard's claim. Ex. 50, Ex. 74. Even if Prudential failed to produce each and every document, log or note contained in the file (paper or electronic) regardless of whether Prudential actually relied on said document, Plaintiff cannot show that she was prejudiced by this oversight. Digregorio v. Hartford Comprehensive Employee Benefit Service Co., et al., 2005 U.S. App. LEXIS 19380 (Sept. 8, 2005). Based on the standard of review, the scope of review and the Record, the Defendants are entitled to summary judgment as a matter of law.

C.  **Prudential's Determination That Plaintiff Was Not Totally Disabled Is Reasonable And Should Be Upheld Because It Is Supported By Substantial Evidence in the Record.**

1.  There Are Contractually Supportable Reasons for Denying Benefits

The evidence in the record is reasonably sufficient to support Prudential's conclusion that the Plaintiff has the capacity to perform the duties of a manufacturing manager. *See* Sullivan, supra at 51 (security guard's ability to perform work in a sedentary environment made him ineligible for LTD benefits). In making its claim decision, Prudential relied upon the Plan's definitions of Total Disability, materials and substantial duties, regular and gainful occupations,

14

45698.2

the physical requirements of Lumbard's position at State Street, other occupations which were reasonably fitted to Lumbard given her medical status and prior education, experience and training, external medical record review and the plaintiff's medical records.

In determining that Plaintiff no longer met the criteria of total disability, Prudential considered that under the Plan, the plaintiff must be incapable of performing <u>the duties of any gainful occupation for which you are reasonably fitted by education, training or experience</u>. Ex. 2. (emphasis added).

The record before Prudential in the instant case demonstrated that Plaintiff has the physical capacity to perform the material and substantial duties of any job for which she was reasonable fitted given her education, training or experience. Thus, Plaintiff was evaluated by Prudential on whether she could perform not only the material and substantial duties of her own occupation but also whether she had the ability to perform the material and substantial duties of any other appropriate, gainful position. In reaching its determination, Prudential obtained a complete transferable skills analysis identifying occupations suited to Lumbard's education, training and experience, as well as a labor market survey which confirmed that jobs in the occupations identified in the TSA were available within Lumbard's labor market (a fifty (50) mile radius from her home). Ex. 74. Given the limitations and restrictions outlined by Lumbard's physician, Dr. Richmond, the medical records review, the policy provisions, the TSA and the Labor Market survey, Prudential correctly concluded that Lumbard no longer met the criteria of Total Disability as defined by the Plan. Thus, there were contractual reasons supporting the decision to terminate benefits.

    2. <u>Substantial Evidence Exists to Support Prudential's Decision</u>

Substantial evidence exists within the record to support Prudential's decision. Thus, the

15

45698.2

decision itself was not unreasonable under a deferential standard of review. Moreover, a reviewing court does not weigh the evidence and determine which side it believes is right. Doyle v. Paul Revere Life Ins. Co, 144 F.3d 181, 184 (1st Cir. 1998). Rather, the reviewing court's role is limited to deciding whether the claim decision was supported by substantial evidence. Terry, 145 F.3d 41. In the First Circuit, substantial evidence is evidence that is reasonably sufficient to support a conclusion. Sullivan v. Raytheon Co., 262 F.3d 41, 51 (1st Cir. 2001); Doyle, 144 F.3d at 184.

Inasmuch as Prudential's decision was not lacking a "rational basis," the Court cannot disregard it. Govoni v. Bricklayers, Masons & Plasters Int'l Union of America, Local 5, 732 F.2d 250, 252 (1st Cir. 1984). The existence of contrary evidence does not make Prudential's decision arbitrary. Vlass, supra at 30. Prudential's decision was based on not only the medical evidence but also on the contractual definitions of total disability as outlined in the Plan, vocational analysis, labor market surveys and outside medical record review. Thus, the complete medical record, including, must be reviewed in light of the contractual definitions of Total Disability.

Third Appeal Decision

The final decision of Prudential made on June 8, 2005, Ex. 91, should be the focus of this Court's review. Orndorf, supra. As part of its review of the final appeal, Prudential retained the services of an independent physician, William D. Abraham, M.D., Orthopedic Surgeon, of Reed Review Services to review Lumbard's medical records. In its final decision, Prudential referred to its prior decision letters of August 28, 2002, February 14, 2003 and October 2, 2003 for a complete explanation of its decision. Ex. 91. The decision outlined the policy provisions which applied including the definitions of total disability, material and substantial duties, and gainful

16

45698.2

and regular occupations. Ex. 91. Prudential noted that in Lumbard's third appeal, Lumbard claimed to be unable to consistently perform sedentary work based on the restrictions prescribed by Dr. Richmond, her prior medical history and reports of chronic pain. Ex. 91.

Prudential outlined the results of the medical record review performed by Dr. Abraham, notably that Dr. Abraham found that based on the documentation provided, Lumbard possessed sedentary work capacity as of October 3, 2002. Ex. 91. Prudential reiterated that the TSA and Labor Market survey performed by Amy Vercillo was based on the information provided by Lumbard and information provided by Lumbard's employer. Ex. 91. Prudential noted that the occupations identified by the TSA and Labor Market survey were sedentary in nature and did not require more than 1 hour per day of walking or standing. Ex. 91. In its decision, Prudential acknowledged that Lumbard may experience symptoms and required continued treatment for her condition however, Prudential determined that the medical evidence did not support a sickness or injury which would preclude her from performing the material and substantial duties of a sedentary occupation. Ex. 91. Prudential's decision contained evidence which is substantial, i.e. reasonably sufficient to support its conclusion. Orndorf, supra. Therefore, Prudential's final decision should be upheld by this Court.

Second Appeal Decision

Assuming *arguendo* that this Court were to find that the "final" decision on Lumbard's claim is the second appeal decision, Ex. 74, Prudential's decision upholding the denial of the claim for benefits is still supported by substantial evidence in the administrative record. Ex. 74. As part of its review of Lumbard's second request for reconsideration, Prudential had a TSA and Labor Market Survey conducted by an outside evaluator, Amy Vercillo, CRC CDMS of Rehabilitation and Re-Employment, Inc., and a report was provided to Prudential on or about

17

September 15, 2003. Ex. 69. TSA reported several occupations that were appropriate for Lumbard's education, training and experience, were within her physical limitations and restrictions and were gainful occupations. These occupations included: Manager, Customer Services; Marketing Manager; Manager, Sales; Sales Manager, Department; and Marketing/Sales Manager-Finance. Ex. 69. Moreover, the results of the Labor Market Survey, which Prudential considered, confirmed that the types of positions identified by the TSA were available within Lumbard's local labor market (a fifty (50) mile radius from her home). In notifying Lumbard that is was upholding its denial of benefits in the second review, Prudential addressed the specific policy provisions it relied upon in its decision, which included the criteria and definition of total disability, the definition of material and substantial duties, and the definitions of regular and gainful occupation in its decision on Lumbard's request for reconsideration. Ex. 74.

Prudential specifically noted that Lumbard's doctor, Dr. Richmond, recommended that Lumbard's activities be restricted to sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 74, Ex. 111. Prudential also considered that Lumbard failed to submit updated documentation concerning any ongoing medical condition or treatment. Ex. 74. Prudential addressed the various issues raised by Lumbard as part of her appeal including Prudential's previous vocation assessment and the criteria of disability and gainful occupation. Ex. 74.

Based on the vocational assessment performed by Amy Vercillo and the occupations identified by Ms. Vercillo which were located within the labor market where Lumbard resided, Prudential determined that there were sedentary occupations available to Lumbard within her physical limitations thus making Lumbard not disabled from any gainful occupation as outlined in the Group Policy. Ex. 74. Prudential outlined the findings of Amy Vercillo and provided

Lumbard with a copy of that report. Ex. 74.  Prudential informed Lumbard that a final appeal of Prudential's decision was available to her. Ex. 74.  Like Prudential's final decision, the second appeals decision was supported by substantial evidence reasonable sufficient to support a conclusion, and should be upheld by this Court.

Regardless of which decision this Court deems to be the "final" decision of Prudential with regard to Lumbard's claim for benefits, there is ample reasoning and evidence to support Prudential's decision as every stage of the appeals process.  Prudential possessed substantial evidence to support its initial decision to terminate benefits and its subsequent decisions to uphold its initial determination. The decision to discontinue Greeley's benefits was not only reasonable but was supported by substantial evidence contained in the administrative record.

## CONCLUSION

Based on the following undisputed material facts, Prudential requests that the Court issue an order granting Prudential's Motion for summary judgment.

Respectfully Submitted,

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY,
By Their Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

45698.2

## CERTIFICATE OF SERVICE

    I, Carey L. Bertrand, hereby certify that a true copy of the foregoing *document* was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 28th day of October 2005 to:

James T. Finnigan, Esq.
Rich May, a Professional Corporation
176 Federal Street
Boston, MA 02110

/s/ Carey Bertrand

45698.2