THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEBORAH M. LUMBARD,
    Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA and STATE
STREET BANK AND TRUST
COMPANY,
    Defendants

C.A. NO. 05-CV-11124PBS

**DEFENDANTS', THE PRUDENTIAL INSURANCE COMPANY OF AMERICA AND
STATE STREET BANK AND TRUST COMPANY,
LOCAL RULE 56.1 STATEMENT OF UNDISUPTED FACTS**

Pursuant to L.R. 56.1 of the United States District Court for the District of Massachusetts, The Prudential Insurance Company of America and State Street Bank and Trust Company(hereinafter collectively referred to as "Prudential") submit this statement of material facts as to which Prudential contends there is no genuine issue necessary to be litigated.

**STATEMENT OF UNDISPUTED FACTS**

The following is Prudential's L.R. 56.1 concise statement of all undisputed material facts:

<u>The Parties and The Plan</u>

1.     The Plan was established and was maintained by Lumbard's former employer, State Street Bank and Trust Company ("State Street"). See Exhibit 2 of the Administrative Record, hereinafter referred to as "Ex. 2."

2.     Lumbard asserts that the Plan is governed by ERISA, which Prudential does not contest. See Plaintiff's Complaint ¶ 4 and Defendants' Amended Answer to the Complaint ¶ 4.

1

45646.1

3. State Street contracted with Prudential to provide its employees with a long-term disability plan as part of its employee benefits program. Ex. 1.

4. The Group Contract, GW-23403 and the Plan contain the terms and conditions of the administration of the LTD Plan. Ex. 1 and 2.

5. Prudential underwrites the Plan's long-term disability benefits and it serves as the claims administrator of the Plan with regard to long-term disability benefits. Complaint ¶ 6, Amended Answer ¶ 6.

6. State Street Corporation is the Plan sponsor and the Benefit Plans Committee of State Street Corporation is the Plan Administrator.  Amended Answer ¶ 6.

7. Prudential has full discretionary authority to control and manage all claims relating to the Plan. Ex. 1 and 2.

8. Pursuant to the terms of the Plan with regard to claims for total disability benefits, the Plan's Booklet-Certificate provides as follows: "You are disabled <u>when Prudential determines</u> that:

- You are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and
- You have a 20% or more loss in your indexed monthly earnings due to that sickness or injury.

After 24 months of payment, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.  (See Ex. 1).

9. From June 1995 through April 2000, Lumbard was employed by State Street. Compl. ¶ 7.

10. Lumbard was a Plan participant pursuant to her employment with State Street. Answer ¶ 7.

45646.1

Plaintiff's Claim for LTD Benefits

11. Prudential began paying Plaintiff long term disability benefits on or about October 3, 2000. Answer ¶ 8 Ex. 25.

12. At the time, Plaintiff reported, via her attending physician's statement, suffering from a non-union of tibial osteotomy of the left leg. Ex. 4 and benefits were awarded after receiving medical records which indicated a disability pursuant to the policy provisions. Ex. 25.

13. Lumbard was paid short term disability benefits from April 2000-August 2000. Ex. 8.

14. Lumbard appealed Prudential's decision to discontinue short term disability benefits and also filed a claim for long term disability benefits on or about November 27, 2000. Ex. 15.

15. Prudential denied the claim for LTD benefits based on Lumbard's failure to meet the elimination period contained in the policy. Ex. 17.

16. After receiving Lumbard's request for reconsideration, Lumbard was awarded benefits retroactive to October 3, 2000. Ex. 24.

17. Prudential retained Injury Management Resources, Inc. ("IMR") to assess Lumbard's suitability for vocational rehabilitation assistance as part of its continuing review of Lumbard's condition and status. Ex. 26.

18. IMR submitted a report to Prudential on or about June 3, 2001. Ex. 26.

19. At that time, IMR concluded that vocational rehabilitation was not appropriate for Lumbard due to her complex medical situation. Ex. 26.

20. Plaintiff's initial period of benefits ended on or about October 2, 2002. Ex. 34.

45646.1

21. Prior to the expiration of the initial period of benefits, Prudential informed Lumbard, by letter dated April 22, 2002, that it was conducting a thorough evaluation to determine her eligibility for benefits beyond the initial period. Ex. 34.

22. Again, Prudential retained IMR to assist Lumbard is identifying appropriate vocational goals and return to work. Ex. 35.

23. IMR provided Prudential with another report on or about May 22, 2002. Ex. 35.

24. IMR concluded that Lumbard had many skills in the sales area and in customer services, had knowledge of financial services and investment plans and that new employment would have to be sedentary. IMR opined that she may be able to work as a sales manager or supervisor or customer service representative working strictly at a desk. Ex. 35.

25. IMR provided Prudential with an additional report, dated June 18, 2002 concluding that there were no jobs which would offer a salary of at least $70,000 and commensurate with Lumbard's physical restrictions of full-time work, sitting up to 6 hours, walking or standing up to one hour and carrying up to 10 lbs.. Ex. 38.

26. On July 26, 2002, IMR provided Prudential with a progress report after meeting with Lumbard. Ex. 42.

27. IMR had the same conclusions as in their previous report. Ex. 42.

28. On or about August 28, 2002, Prudential determined, based on the medical records and vocational analysis, that Plaintiff no longer met the criteria of total disability as defined by the Plan. Ex. 45.

45646.1

29. Prudential noted that Lumbard's doctor, Dr. Richmond, had placed the following restrictions on Lumbard, sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 111, Ex. 45.

30. Based on these restrictions, a transferable skills analysis ("TSA") was performed which revealed several gainful jobs that Lumbard could perform based on her education, experience, training and physical abilities, including Securities Trader, Registered Representative, Banking, Loan Officer, Customer Service Supervisor. Ex. 135, Ex. 45.

31. Prudential informed Plaintiff that she would no longer receive benefit payments past October 2, 2002. Ex. 45.

32. Lumbard, through counsel,[1] filed a notice of intent to appeal on or about September 10, 2002. Ex. 49.

33. On or about September 10, 2002, Prudential sent Lumbard a copy of her disability claim file. Ex. 50.

34. On January 10, 2003, Lumbard, through counsel, submitted her formal appeal of Prudential's decision to discontinue benefits. Ex. 59.

35. Prior to this submission, Prudential informed counsel that the claims file had been sent to Lumbard on September 10, 2002 and forwarded the TSA and progress report from IMR to counsel. Ex. 55, 56.

36. Prudential acknowledged receipt of Lumbard's request for reconsideration for her

---

[1] Plaintiff's current counsel, have been involved with this matter since Plaintiff's initial appeal of Prudential's decision. Counsel for Plaintiff has been involved at every stage of the appeals process and therefore has taken a role in shaping the administrative record as it exists today. The administrative record includes all correspondence and

5

45646.1

claim on January 30, 2003 and began a thorough evaluation of her claim. Ex. 60.

37. After its review, Prudential upheld its decision to discontinue benefits on February 14, 2003. Ex. 62.

38. Prudential based its decision on the provisions of the Group policy and its review of statements from Lumbard, her physicians, her employer, medical records and information about Lumbard's occupation. Ex. 62.

39. With regard to the policy provisions, Prudential specifically addressed the criteria and definition of total disability, the definition of material and substantial duties, and the definitions of regular and gainful occupation in its decision on Lumbard's request for reconsideration. Ex. 62.

40. Again, Prudential noted that Lumbard's doctor, Dr. Richmond, had recommended permanent restrictions on Lumbard including sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 62, Ex. 111.

41. Prudential determined that based on the job description provided by her employer, Lumbard's job was matched by a combination of two DOT titles, Registered Representative and Sales Representative, Financial Services. Ex. 62.

42. Prudential considered the DOT definition of occupation and DOT occupational descriptions. Ex. 62.

43. Based on this information, Prudential concluded that Lumbard could earn a gainful wage within 12 months of her return to work, that Lumbard had the ability to perform the material and substantial duties of any occupation, including her own

related material received from counsel.

as her restrictions and limitations fell within the requirements of that occupation. Ex. 62.

44. Lumbard, through counsel, submitted notice of intent to appeal Prudential decision. Ex. 32. (Note, the letter is dated April 3, 2002, but counsel believes that it should be dated April 3, 2003 as it was sent specifically in response to Prudential's decision dates February 14, 2003.)

45. Lumbard then submitted her second formal appeal to Prudential on or about July 31, 2003. Ex. 65.

46. In connection with the appeal, Lumbard relied on the Vocation Analysis prepared by Robert Violetta, MS, CRC, CDMS. Ex. 64, Ex. 65.

47. Lumbard supplemented her appeal on or about August 4, 2003. Ex. 66, Ex. 67.

48. Prudential acknowledged receipt of Lumabrd's second request for reconsideration on or about September 2, 2003. Ex. 68.

49. As part of its review of Lumbard's second request for reconsideration, Prudential had a TSA and Labor Market Survey conducted by an outside evaluator, Amy Vercillo, CRC CDMS of Rehabilitation and Re-Employment, Inc., and a report was provided to Prudential on or about September 15, 2003. Ex. 69.

50. The results of the TSA indicated that several occupations were identified that were appropriate to Lumbard's education, training and experience, were within her physical limitations and restrictions and were gainful occupations: Manager, Customer Services; Marketing Manager; Manager, Sales; Sales Manager, Department; and Marketing/Sales Manager-Finance. Ex. 69.

51. The results of the Labor Market Survey indicated that the positions identified by

7

        the TSA were available within Lumbard's local labor market (a fifty (50) mile radius from her home).

52. On or about October 2, 2003, Prudential informed Lumbard of its decision to uphold its original determination discontinuing Lumbard's benefits as of October 2, 2002. Ex. 74.

53. Again, Prudential outlined the specific policy provisions it reviewed in making its decision; the criteria and definition of total disability, the definition of material and substantial duties, and the definitions of regular and gainful occupation in its decision on Lumbard's request for reconsideration. Ex. 74.

54. Again, Prudential noted that Lumbard's doctor, Dr. Richmond, had recommended permanent restrictions on Lumbard including sitting up to 6 hours per day, walking one hour per day with rest, standing one hour per day with rest and carrying up to 10 lbs. Ex. 74, Ex. 111.

55. Prudential also noted that Lumbard did not submit any documentation to Prudential relating to Lumbard's ongoing medical condition or treatment. Ex. 74.

56. Prudential addressed the various issues raised by Lumbard as part of her appeal including Prudential's previous vocation assessment and the criteria of disability and gainful occupation. Ex. 74.

57. Based on the vocational assessment performed by Amy Vercillo and the occupations identified by Ms. Vercillo which were located within the labor market where Lumbard resided, Prudential determined that sedentary transferable occupations were available to Lumbard within her physical limitations thus making Lumbard not disabled from any gainful occupation as outlined in the

45646.1

Group Policy. Ex. 74.

58. Prudential outlined the findings of Amy Vercillo and provided Lumbard with a copy of that report. Ex. 74.

59. Prudential informed Lumbard that a final appeal of Prudential's decision was available to her. Ex. 74.

60. Lumbard submitted her third and final appeal to Prudential on or about December 23, 2004, over a year after Prudential's decision on the second request for reconsideration. Ex. 77.

61. Lumbard provided Prudential with the decision of an Administrative Law Judge at the Social Security Administration, exhibits provided to the ALJ, a letter from Dr. Richmond, and a vocational analysis report prepared by Robert Violetta in support of her appeal. Ex. 77.

62. Prudential acknowledged receipt of Lumbard's final appeal on or about January 5, 2005. Ex. 78.

63. On or about January 26, 2005, Prudential requested from counsel additional medical documentation from Dr. Richmond. Ex. 79.

64. Said additional documentation was provided by counsel on or about February 17, 2005. Ex. 80.

65. On March 1, 2005, counsel confirmed that Prudential had been provided with all of the medical records. Ex. 81.

66. On March 24, 2005, Prudential requested an extension of time to make a determination on Lumbard's final appeal of 45 days. Ex. 83.

67. Lumbard granted the extension and Prudential required an additional extension of

9

30 days to make its decision. Prudential requested an additional extension on May 18, 2005. Ex. 85.

68. As part of its review of the third appeal, Prudential retained William D. Abraham, M.D., Orthopedic Surgeon, of Reed Review Services to review Lumbard's medical records.

69. Dr. Abraham provided Prudential with a report on May 27, 2005. Ex. 86.

70. On May 31, 2005, counsel for Lumbard informed Prudential that Lumbard would not agree to an additional 30 day extension of time to make its decision as requested on May 18, 2005. Ex. 87.

71. Counsel for Lumbard stated that Prudential's failure to act within the time prescribed by ERISA was a deemed denial of Lumbard's claim. Ex. 87.

72. On June 1, 2005, counsel filed a Complaint on Mrs. Lumbard's behalf. Complaint.

73. On June 8, 2005, Prudential made its final determination on Lumbard's third appeal and notified counsel of its decision. Ex. 91.

74. Prudential upheld its decision to discontinue benefits as of October 2, 2002. Ex. 91.

75. Prudential referred to its prior decision letters of August 28, 2002, February 14, 2003 and October 2, 2003 for a complete explanation of its decision. Ex. 91.

76. Prudential noted that in Lumbard's third appeal, Lumbard claimed to be unable to consistently perform sedentary work based on the restrictions prescribed by Dr. Richmond, her prior medical history and reports of chronic pain. Ex. 91.

77. Prudential outlined the results of the medical record review performed by Dr.

45646.1

Abraham, notably that Dr. Abraham found that based on the documentation provided, Lumbard possessed sedentary work capacity as of October 3, 2002. Ex. 91.

78. Prudential reiterated that the TSA and Labor Market survey performed by Amy Vercillo was based on the information provided by Lumbard and information provided by Lumbard's employer. Ex. 91.

79. Prudential noted that the occupations identified by the TSA and Labor Market survey were sedentary in nature and did not require more than 1 hour per day of walking or standing. Ex. 91.

80. Prudential acknowledged that Lumbard may experience symptoms and continue treatment for her condition however, Prudential determined that the medical evidence did not support a sickness or injury which would preclude her from performing the material and substantial duties of a sedentary occupation. Ex. 91.

81. Prudential advised Lumbard of her rights to file a lawsuit under ERISA as a result of its decision. Ex. 91.

## CONCLUSION

Based on the following undisputed material facts, Prudential requests that the Court issue an order granting Prudential's Motion for summary judgment.

Respectfully Submitted,

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY,
By Their Attorneys,

11

45646.1

<u>/s/ Carey Bertrand</u><br>
William T. Bogaert, BBO#546321<br>
Carey L. Bertrand, BBO#650496<br>
WILSON, ELSER, MOSKOWITZ,<br>
EDELMAN & DICKER, LLP<br>
155 Federal Street<br>
Boston, MA 02110<br>
(617) 422-5300

<u>CERTIFICATE OF SERVICE</u>

I, Carey L. Bertrand, hereby certify that a true copy of the foregoing *document* was served upon all counsel of record by forwarding a copy of the same, first class mail, postage prepaid on this 28th day of October 2005 to:

James T. Finnigan, Esq.<br>
Rich May, a Professional Corporation<br>
176 Federal Street<br>
Boston, MA 02110

<u>/s/ Carey Bertrand</u>

45646.1