THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

DEBORAH M. LUMBARD,
    Plaintiff,

v.

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA and STATE
STREET BANK AND TRUST
COMPANY,
    Defendants

C.A. NO. 05-CV-11124PBS

### DEFENDANTS', THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY, OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, The Prudential Insurance Company of America and State Street Bank and Trust Company (hereinafter collectively referred to as "Prudential" unless otherwise specifically referred to as "State Street") submits their Opposition to Plaintiff's Motion for Summary Judgment. In support of their Opposition, Defendants state as follows:

### INTRODUCTION

Despite Plaintiff's arguments in her Motion for Summary Judgment, this Court should uphold Prudential's decision for three reasons. First, there is substantial medical evidence contained in the record which supports Prudential's conclusion that Lumbard has physical capacity for sedentary work. Second, the vocational evidence contained in the record establishes that Plaintiff has the education, experience and training to work in gainful occupation within her labor market area. Third, Courts in the District of Massachusetts have interpreted the identical plan language in this case and have unanimously held that the arbitrary and capricious standard

1

47398.1

applies. This honorable Court should grant Prudential's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment based on these three reasons.

**A.   MEDICAL EVIDENCE**

Prudential had substantial evidence to support its decision given the restrictions and limitations provided by Dr. Richmond and the large gaps in actual treatment for her condition and Prudential made a reasonable decision based on that evidence. Leahy v. Raytheon Co., 315 F.3d 11 (1st Cir. 2002). A decision adverse to a claimant is not one which is arbitrary and capricious merely because it does not resolve the conflict in favor of the treating physicians' opinions. Sullivan, 262 F.3d at 51. Moreover, even though Prudential resolved the conflict against the opinion of Dr. Richmond from August of 2004, it is of no consequence. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003). Prudential reviewed the entirety of Plaintiff's medical records provided in making its decision and simply because it came to a conclusion different from the one made by Dr. Richmond in August of 2004, does not make said conclusion arbitrary.

The medical evidence contained in the administrative record is sufficient to demonstrate that the Plaintiff has a physical capacity for sedentary work. Prudential's decision to discontinue benefits was based on the medical evidence and the restrictions and limitations outlined by Dr. Richmond. Based on a review of the medical evidence, there can be no dispute that Plaintiff suffers from a medical condition which has required surgical intervention and has caused Plaintiff pain and discomfort. However, there is substantial medical evidence, notably from Plaintiff's own treating physician, Dr. Richmond, that Plaintiff has sedentary work capacity. Although Plaintiff's brief outlines serious impairments and medical conclusions, a majority of the serious impairments and medical conclusions are stated by Plaintiff herself, and are not found in the

2

47398.1

actual medical records of her treating physician, Dr. Richmond. See citations in Plaintiff's brief to Ex. 77, DML 00419-00423 which is Plaintiff's statement not actual medical records.

The record evidence regarding Plaintiff's condition begins in 1998, when Plaintiff had surgery on her knees. Plaintiff was working for State Street when she underwent surgery on February 17, 1998. Ex. 4, DML 00059. She did take time off of work, however, the medical records from Dr. Richmond indicate an improvement after the surgery for a period of several months. Ex. 95. Days after the surgery, Dr. Richmond noted that "she was doing well, having no troubles except for numbness lateral to her incision." Ex. 95, DML 00549. There are no notes from Dr. Richmond again until September 14, 1998, where Dr. Richmond notes slight improvement. Ex. 95, DML 00550. A screw was removed from her knee shortly after that as it was causing her pain. Ex. 95, DML 00553. Dr. Richmond noted on March 19, 1999 that Plaintiff had increased her activities and tolerated her increase of activities. Ex. 95, DML 00555.

Plaintiff returned to work at State Street a year after the surgery. Ex. 95, DML 00556. While Dr. Richmond noted on May 7, 1999 that Plaintiff had been experiencing a fairly significant flare up of pain, Dr. Richmond stated, "she has been back to work since the end of February and does not relate her current symptoms to returning to work." Ex. 95, DML 00556. Despite this, Dr. Richmond suggested that Plaintiff decrease her commuting time to work. Id. Dr. Richmond suggested a follow up months later, in the middle of the summer. Id.

Plaintiff's statement to the Administrative Law Judge in her application for Social Security benefits paints an entirely different picture than the medical records from Dr. Richmond during this time period after Plaintiff's return to work. Plaintiff's statement, which was included in the record as part of her third and final appeal to Prudential, stated specifically in paragraph 15 that she was cleared to work part-time and that "working was a nightmare." Ex. 77,

3

DML 00420.  In May of 1999, Plaintiff had told Dr. Richmond that she had been experiencing a flare-up for 3-4 weeks but the symptoms were not related to work.  Ex. 95, DML 00556.  Plaintiff certainly changed her report of pain when there was a potential for secondary gain.  One has to presume that she reported to her physician truthfully and that he made his conclusions and recommendations based on her reports of pain.  Thus, regardless of what Plaintiff reported to the Administrative Law Judge, Prudential was entitled to rely on the reports of Dr. Richmond, Plaintiff's own physician, when determining what Plaintiff's limitations and restrictions were after Plaintiff filed her claim for long term disability benefits.

      The evidence contained in the record indicates that Plaintiff continued to work at State Street until April 2000, more than a year after she returned to work after her surgery in 1998.  Ex. 77, DML 00421, Ex. 4.  Plaintiff underwent surgery again in April of 2000, though Plaintiff filed her claim for benefits on March 9, 2000.  Ex. 4.  Dr. Richmond noted on April 13, 2000 post-operatively that Plaintiff had no pain and felt good.  Ex. 95, DML 00558.  Plaintiff began physical therapy and was recommended for discharge to a home exercise program on May 18, 2000.  Ex. 95, DML 00559.  In August of 2000, Dr. Richmond recommended an increased walking program and indicated upon physical examination, Plaintiff had a full range of motion in both knees.  Ex. 95, DML 00561.

      On October 20, 2000, there was a marked shift.  Disability insurance was never mentioned previously in Plaintiff's medical records, however, Dr. Richmond noted in October of 2000 that Plaintiff was having issues with disability insurance and that the insurer did not understand her marked limited ability and the long term nature of her problem.  Ex. 96, DML 00563.  Ironically, Plaintiff reported that she had gone downhill.  Id.  When Dr. Richmond filed an attending physician's statement back in April of 2000 to support her claim for benefits, Dr.

Richmond anticipated a return to work within 3 or 4 months. Ex. 4, DML 00059. On the four month mark, August 2000, Dr. Richmond's notes indicated that Lumbard was progressing and he imposed no physical restrictions, in fact, he suggested that she gradually increase her activity. Ex. 95, DML 00561. It is only upon the report of difficulty with the Insurer that Dr. Richmond notes his strong feeling that she is incapable of her previous work duties. Ex. 96, DML 00563.

During the process of evaluating Lumbard's claim for long term disability benefits, Dr. Richmond provided Prudential with his assessment of Lumbard's functional abilities in January of 2001. Ex. 111. Prudential's decision to discontinue her benefits relied specifically on the functional capacity, limitations and restrictions provided by Dr. Richmond. Despite the alleged severity of Plaintiff's medical condition, Dr. Richmond did not treat Plaintiff for an entire year, October 2000 through September 2001. Ex. 113.

Once Lumbard began treating again with Dr. Richmond on September 24, 2001, Dr. Richmond noted Plaintiff had episodic severe pain on a regular basis. Ex. 113. Dr. Richmond also noted that Plaintiff had been followed by the pain clinic. Ex. 113. Dr. Richmond continued to restrict Lumbard's activities and stated she was disabled as to her usual employment. Ex. 113. Since there is no medical record to indicate otherwise, the restrictions noted are assumed to be the restrictions outlined in January of 2001. Ex. 111. These were the restrictions that Prudential used to consider whether Plaintiff was disabled within the provisions of the policy.

Plaintiff has argued that Prudential did not consider the pain that Lumbard was suffering in its review of her claim. As mentioned throughout this Opposition, Prudential considered all of the information contained in the record when making its decision and requested additional information directly from Lumbard when needed. Though there are mentions of attending a pain clinic in some of the records, Plaintiff did not submit any reports from the pain clinic in support

5

of her claim that she suffered from disabling pain. Plaintiff's own report in her "Activities of Daily Living Questionnaire," submitted to Prudential indicates that she was treating with the pain clinic but was not taking any medication due to her receiving fertility treatments. Ex. 114. Thus, as of November 2001, despite Plaintiff's reports of severe pain, it does not appear that she was taking any pain medication to treat her symptoms. Ex. 114. In Plaintiff's statement to the Administrative Law Judge, Plaintiff makes no mention of her condition or treatment between April 2000 to November of 2003 and she makes no mention of pain medication beyond discontinuing Vioxx due to recent revelations about the side effects. Ex. 77, DML 00421. As mentioned above, Dr. Richmond did not treat Lumbard for one year during this period. Given the absence of pain clinic records and months where Lumbard was not taking any pain medication, Prudential's decision, despite of Lumbard's claim of disabling pain, is supported by the evidence in the record.

    The medical evidence in the record and Plaintiff's own statements in Ex. 114 indicate that she ceased using pain medication for a period of time due to fertility treatments. Apparently, the fertility treatments were successful as the medical records from June 2004 indicated that Lumbard had thirteen month old triplets at home at the time she was being assessed for another surgery. Ex. 118. In November 2003, six months after her triplets were born; Lumbard began receiving injections from Dr. Richmond. There are no treatment records from September 2001 through November of 2003 contained in the record. Lumbard's focus had obviously changed in September of 2001 from her own condition with her knees to starting a family. Once she was successful at starting a family, she began to treat again for her medical condition at issue in this claim. Given these medical records and Plaintiff's own statements in Ex. 114, the pain could not have been as disabling as Lumbard claims since she was able to go for a period of months

without treating her pain with medication in order to participate in the fertility treatments.

Prudential, throughout the appeals process, relied on Lumbard's own physicians to determine her physical restrictions and limitations. Despite Plaintiff's claims that her pain was disabling, Dr. Richmond had not changed his specific restrictions and limitations provided to Prudential in January 2001 until August 12, 2004. The restrictions were changed when Dr. Richmond wrote a letter on Plaintiff's behalf, presumably to support her in her application for Social Security Disability Benefits. Ex. 77, DML 00415. Plaintiff had undergone surgery in June of 2004 and surgical records were provided to Prudential, but no post-operative medical records were submitted by Plaintiff in support of her third appeal. Ex. 77. Thus, Dr. Richmond's letter of August 2004, has to be considered in the context in which it was written, to assist his patient to obtain benefits.

Despite the ample evidence contained in the record which indicates that her condition was not as disabling as she claimed, Plaintiff has focused several of her arguments on the general contention that Prudential did not properly review Plaintiff's claim. Plaintiff argues that the process was arbitrary because a medical record review was not obtained, the appeals committee did not actually meet to consider her claim and that evidence was not considered by Prudential and that the delay in the third decision, despite being due to waiting for the very thing she argues Prudential should have done (an outside record review), warrants *de novo* review by this Court. Perhaps Plaintiff has focused on the alleged flaws in the appeals process because Plaintiff cannot point to persuasive medical records to refute Prudential's conclusion that she was not disabled within the meaning of the policy. Again, Plaintiff's evidence to support her claim is based primarily on her own subjective statements of her medical condition. Several of Plaintiff's citations to medical evidence are actually citations to Plaintiff's statement to the Administrative

7

47398.1

Law Judge and not actual medical records. See Plaintiff's citations to Ex. 77, pgs. 00419-00423 and Plaintiff's Statement of Facts, ¶¶ 13-24, 26-41.  Given the substantial evidence contained in the record, Prudential made a reasonable decision which should be upheld by this Court.

**B.     OCCUPATIONAL DUTIES AND QUALIFICATIONS**

Prudential's decision to discontinue benefits due to the conclusion that Plaintiff's sedentary work capacity is bolstered by the vocational evidence in the record which indicates that Plaintiff had the education, training and experience to perform jobs within her local labor market. Prudential retained an outside vocational rehabilitation specialist as part of the appeals process, Amy Vercillo, to assist Prudential in determining whether jobs existed which were gainful and appropriate for Plaintiff.

Plaintiff, during the appeals process and in her Motion for Summary Judgment has consistently stated that Prudential misunderstood her job duties and responsibilities.  Plaintiff has alleged that Prudential misunderstood her job title to be that of Vice President when she was actually just a sales person.  However, Plaintiff herself on multiple occasions stated that she was a Vice President.  In Plaintiff's statement to the Administrative Law Judge for Social Security Benefits, Lumbard stated that she was a Vice President of Strategic Marketing for Global Securities Lending.  Ex. 77, DML 00419, ¶ 1.  On the attending physician's statement in the section filled out by Plaintiff in March of 2000, Lumbard listed her occupation as Vice President Sales and Marketing.  Ex. 4.  Prudential inquired with State Street regarding the description of Plaintiff's job requirements and in April of 2000, State Street informed Prudential that her job title was Vice President.  Ex. 7.  State Street then informed Prudential several months later, in October of 2000 that Lumbard was an institutional sales person.  Despite this new information, Prudential did mistakenly state that her job title was vice president when it denied her claim for

8

short term disability benefits in December of 2000. Ex. 17. However, this mistake was remedied shortly thereafter and was of no consequence to her claim for long term disability benefits.

Plaintiff appealed the denial of short term disability benefits and sought long term disability benefits. Prudential did then reinstate her claim for benefits on January 23, 2001. Ex. 24. Prudential then paid long term benefits through October 2, 2002. Ex. 45. When Prudential informed Lumbard in August of 2002 that it was discontinuing her benefits, Prudential correctly identified her position as a new business officer. Ex. 45. Thus, the earlier mistake regarding the classification of Plaintiff's position as "vice-president" was of no consequence.

Prudential's decision that Plaintiff had work capacity was based on Dr. Richmond's restrictions and limitations of what Lumbard could and couldn't do. Ex. 45. Dr. Richmond's specific restrictions and limitations contradict her conclusion that she is unemployable. Prudential also correctly noted that Plaintiff possessed a Bachelor's degree in Psychology and had previous experience in customer service, sales and marketing. Ex. 45. Plaintiff appealed Prudential's decision and in response to the issues raised with the vocational assessment by Plaintiff in her appeal, Ex. 59, Prudential outlined the occupational definitions used to match certain occupations to Plaintiff's education, experience and training. Ex. 62. Prudential concluded that there were jobs available within her skill set that could be considered gainful occupations. Ex. 62. Plaintiff appealed again and offered the report of Dr. Violetta in support of her appeal. Ex. 64, Ex. 65. In response to Plaintiff's appeal, Prudential obtained Amy Vercillo to perform a transferable skills analysis and a labor market survey. Ex. 69.

Amy Vercillo identified specific skills which Lumbard possessed based on her past work history. Ex. 69. Ms. Vercillo then identified occupations and specific positions within those occupations where Lumbard could use her specific skills. Ex. 69. Plaintiff has argued that most

9

of the jobs identified by Ms. Vercillo were managerial and that Lumbard had no managerial experience or skill. However, Ms. Vercillo concluded that Lumbard's past work history indicated that Lumbard could "direct and coordinate, through subordinate managerial personnel, activities of a department, administrative division or specific function of financial institution. Coordinates activities of assigned program, such as sales, operations or electronic financial services, determines methods and procedures for carrying out program and assists in interpreting policies and practices." Ex. 69, DML 00280. Thus, although she had not worked in a management position previously, that does not mean that she does not possess the skill to do so in the future. Prudential relied on the report of an experienced and highly qualified vocational specialist, Amy Vercillo, when it made its final decision. Thus, given the evidence in the record, Prudential's decision was supported by substantial evidence.

Plaintiff has alleged that Prudential was opinion shopping, however Prudential made it clear to Plaintiff in its letter of February 14, 2003 that Prudential had hired a vocational rehabilitation counselor to assist with placement services and/or retraining based on Plaintiff's interests. Ex. 62, DML 00232. Prudential stated that the vocational counselor was not involved in the disability claim management decision. Id. Thus, Plaintiff's claims of opinion shopping are unfounded. Again, Plaintiff has attempted to have it both ways. She finds fault with the process when Prudential based its decision on an internal employability review in making its decision and cries "opinion shopping" when Prudential retains an outside evaluator to perform a transferable skills analysis and labor market survey. For the reasons mentioned above, Prudential's decision should be upheld.

C. **STANDARD OF REVIEW**

1. <u>Case Law in this District Indicates that the Applicable Standard of Review is Arbitrary and Capricious</u>

Plaintiff has argued that the applicable standard of review is *de novo* based on the argument that Courts outside this District have found that the "when Prudential determines" language is insufficient to confer discretion upon Prudential. This argument ignores the case law of this District, where Massachusetts Courts have found that this very same language sufficient to confer discretion upon Prudential.

As mentioned in Prudential's Memorandum of Law in Support of Their Motion for Summary Judgment, Judge Stearns ruled that the plan language was sufficient to grant Prudential authority and discretion and ruled that the applicable standard of review was arbitrary and capricious. *McLaughlin v. The Prudential Insurance Company of America*, 2004 U.S. Dist. LEXIS 9313 (D. Mass. 2004*)(* the plan language at issue was "[y]ou are disabled when Prudential determines that…"*); See also McEleney v. The Prudential Insurance Company of America*, C.A. No.: 02-11666-MEL, Unpublished Endorsement of Judge Lasker, July 21, 2004, (D. Mass. 2004)(holding Plan language was sufficient to grant discretion and ruling that applicable standard of review was arbitrary and capricious).[1] Thus, the arbitrary and capricious standard should be applied to the instant case.

2. <u>Even if the Applicable Standard of Review is *De Novo*, Prudential's Decision Should be Upheld.</u>

Prudential is entitled to judgment on the administrative record even in the event that the Court applies the *de novo* standard. It is well-established law that a plaintiff in an ERISA § 502(a) LTD action must bear the burden of proof in establishing disability, regardless of the

standard of review.  *Terry*, 145 F.3d 34; Gallagher v. *Reliance Standard Life Ins. Co., 305* F.3d 264, 276 (4th Cir. 2002) ("our *de novo* review of Reliance's denial of Gallagher's claim for disability benefits reveals that Gallagher failed to submit, as required under the Plan, objectively satisfactory proof of a disability that made him incapable of performing each and every material duty of his occupation.")  Under Rule 56(c) a moving party is entitled to summary judgment if it demonstrates that the party opposing the motion has not reasonable expectations of proving an essential element of that party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Here, the Court must determine not whether there is literally *no* evidence favoring Lumbard but whether there is any evidence upon which a fact-finder could *properly* proceed to find a verdict in her favor.[2]  *DeArteaga v. Pall Ultrafine Filtration Corp.,* 862 F.2d 940, 941 (1st Cir. 1988).

Should the Court review the administrator's benefit determination under the de novo standard Prudential is entitled to judgment as a matter of law because it made the objectively correct decision on the plaintiff's claim.  *Armstrong v. Aetna Life Ins. Co.,* 128 F.3d 1263, 1266 (8th Cir. 1997)(employing *de novo* standard court upholds the denial of ERISA-plan benefits based on 180-day preexisting conditions exclusion): *Anderson v. Trumbull-Mahoning Medical Group, Inc.,* 210 F.3d 371, 2000 WL 331943, ∗1 (6th Cir. 2000)("whether reviewed under arbitrary and capricious standard or *de novo* standard, the insurance company's decision….was correct.").  Here, the burden of proof rests with Lumbard.  Based on the record evidence, including evidence submitted by the plaintiff's treating physicians and evidence from the Social Security Disability determination, she has no reasonable expectation of proving that she is

---

[1] For a complete explanation of the arbitrary and capricious standard of review in the First Circuit, please see Prudential's Memorandum of Law in Support of Their Motion for Summary Judgment, pgs. 8-10.

[2] Prudential refers this Court to Their Memorandum of Law in Support of Their Motion for Summary Judgment for a complete overview of all of the evidence which supported Prudential's decision to discontinue benefits and refers to the other sections of this Opposition herein.

47398.1

unable to perform the material and substantial duties of any gainful occupation. Prudential had ample evidence upon which to base its decision.

In an ERISA discontinuance-of-benefits action, where the court's review is either abuse of discretion or *de novo,* the proper record to be considered is the record that was before the claim fiduciary when it rendered its final benefit determination. If this Court determines that the de novo standard of review applies, then this Court is permitted to review the record and reach its own decision regarding the Plaintiff's claim for benefits. In the present case, Prudential filed a proposed record and Plaintiff has essentially objected to the inclusion of certain documents, specifically the documents included after Lumbard refused to grant Prudential additional time to complete its decision on her third appeal. Prudential contends that the Court should consider all of the evidence before it prior to the date of its final claim decision as Prudential continued to act in good faith despite the delay in making the third and final decision.[3] Plaintiff has argued that Prudential's delay should be considered a "deemed denial" of Lumbard's claim and thus *de* novo review should apply. Plaintiff's own brief acknowledged that no Court in this Circuit has addressed this issue. Further, Plaintiff has noted that this District Court has found previously that a delinquent decision did not subject the decision to *de novo* review since it substantially complied with the regulatory guideline. Papadopolous v. Hartford Life Ins. Co., 379 F. Supp. 2d 117, 124 (D. Mass. 2005)(taking 145 days to decide the appeal instead of 120 days was deemed substantial compliance with the regulations.) The Papadopolous Court noted substantial compliance is sufficient. Papadopolous, supra *citing* Terry, supra at 39.

In the instant case, Prudential did not begin its review of the third appeal of Lumbard until

---

[3] As noted in Prudential's Memorandum of Law in Support of Their Motion for Summary Judgment, Prudential required additional time to make its third and final decision because it was waiting for the independent physician's

47398.1

February 17, 2005, the day that Plaintiff submitted the outstanding medical information necessary to complete her appeal. Ex. 80. On March 24, 2005, Prudential asked for additional time in which to respond. Ex. 83. On May 18, 2005, Prudential informed Plaintiff that it was still reviewing her claim and requested an additional 30 days to respond. Ex. 85. Prudential rendered its decision on June 8, 2005. Thus, Prudential's decision was rendered in approximately 110 days as opposed to the statutory deadline of 90 days. Like Papadopolous, Prudential substantially complied with the regulations pursuant to the law of this Circuit. Moreover, the delay was due to the outstanding medical record review being performed. Thus, this claim should not be reviewed *de novo* as Prudential's decision substantially complied and the delay was due to Prudential obtaining an outside medical record review in response to the new information provided by Lumbard as part of her third appeal.[4]

Despite Plaintiff's argument that it is unclear if the appeals committee actually met and exercised discretion to make a determination on Plaintiff's claim, the evidence in the records suggests otherwise. A SOAP note dated June 2, 2005, indicates who participated and voted in the appeals committee meeting. Ex. 133, DML 00662. This SOAP note also clearly outlines all of the evidence considered by the Appeals Committee. Id. Plaintiff has also argued that Prudential failed to address the SSA's determination that Lumbard was totally disabled. This argument is unfounded in that Prudential offset Lumbard's disability income based on the decision of the SSA. The reason why Prudential offset Lumbard's long term disability payments due to the SSA determination is because the contract provisions require an offset to ensure that claimants are not

---

report on the record review.

[4] Ironically, on one hand, Plaintiff argues that Prudential's decision should not be upheld because Prudential did not obtain a medical record review prior to the third appeal. On the other hand, Plaintiff states that the claim should be deemed denied despite the fact that Prudential needed additional time because it was waiting for the results of the independent records review. Essentially, no matter what Prudential did (or didn't do) Plaintiff would find fault with

14

47398.1

better off while receiving disability then had they been working.  Moreover, as Plaintiff correctly noted, the standards are different and the SSA did not consider the policy provision in making its decision, thus the decision is not binding on Prudential.

<u>CONCLUSION</u>

Based on the foregoing, the defendants, The Prudential Insurance Company of America and State Street Bank and Trust Company respectfully request that the Court issue an order granting their Motion for Summary Judgment and denying Plaintiff's Motion for Summary Judgment.

                                               Respectfully Submitted,

                                               THE PRUDENTIAL INSURANCE COMPANY OF AMERICA and STATE STREET BANK AND TRUST COMPANY, By Their Attorneys,

/s/ Carey Bertrand
William T. Bogaert, BBO#546321
Carey L. Bertrand, BBO#650496
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP
155 Federal Street
Boston, MA 02110
(617) 422-5300

the decision.

47398.1